ABRAHAM J. BERRY v. The Executors of ISAAC J. VAN WINKLE, deceased.

Upon a bill for the specific performance of an agreement contained in a lease, that at the expiration of the term, the improvements made on the demised premises by the lessee, shall remain the property of the lessor on making the lessee a fair compensation for the same; the court will entertain jurisdiction though the bill be purely for compensation and damages, provided a specific performance may be decreed, and the complainant can have adequate relief only in equity.

The charge for improvements made upon the property by the lessee, under the terms of such an agreement, is in equity a lien on the property.

The court will not extend its jurisdiction beyond the claim of the lessee for compensation for valuable and permanent improvements put by him upon the demised premises, and which pass to the lessor at the expiration of his term; and will not suffer a claim for alleged infringements of the rights of the lessee during his term, to be drawn in question.

THE bill, filed on the 23d of March, 1835, states, that Isaac J. Van Winkle, in his life, executed to one James Buckley, a lease of a certain saw-mill and premises in the township of Aquackenonk, in the county of Bergen. By the lease, which is dated on the 7th of March, 1814, Isaac J. Van Winkle leases the premises to James Buckley for twenty-one years, commencing on the first day of May, 1814, upon the yearly rent of forty dollars; and it was in and by the said lease covenanted and agreed, that the said James Buckley, his executors, administra-

tors or assigns, might at any time during the said term, at his or their own costs and charges, erect a carding and fulling mill, and any other machinery upon the premises. Van Winkle further agreed to let Buckley have the privilege of getting from off Van Winkle's land as many stones as might be necessary to erect the buildings to the first story, and to complete the mill-dam, Buckley being at the sole expense thereof. It was further agreed, that Buckley should have the privilege of extending the mill-dam as far as Van Winkle's land extended, the dam to remain the property of Van Winkle at the expiration of the lease, without any compensation to Buckley therefor. It was also agreed between the parties, that at the expiration of the term, all the improvements made on the lot should be and remain the property of Van Winkle, he paying to Buckley the value thereof, or satisfying him, his heirs or assigns for the improvements so made thereon, and if they could not agree as to the value of the improvements made on the premises, then the improvements were to be valued by two impartial men chosen by the parties, and if they could not agree they were to make choice of a third person, and the sum awarded by any two of them to be final and conclusive, unless Van Winkle renewed the lease for twenty-one years at the same rent of forty dollars per annum. All taxes and assessments upon the premises during the term were to be paid by Buckley. On the 18th of July, 1828, Buckley, having erected a saw-mill and a woolen-mill with machinery upon the premises, assigned the said lease, with all his interest in the demised premises, unto James Arthur. On the 29th day of July, 1830, all the interest of James Arthur in the said demised premises having been levied upon by virtue of an execution issued against him, was sold by the sheriff of the county of Bergen to the complainant, for three hundred and fifty dollars, and a deed bearing date on the 26th of January, 1832, was duly executed to the complainant in pursuance of said sale. On the 1st of August, 1830, the complainant entered into possession of said premises, and held the same as the tenant of Van Winkle, performing all the covenants that were to be performed by Buckley, until the month of May, 1832.

[Berry v. Ex'rs of Van Winkle.]

On the 14th day of July, 1831, Van Winkle and wife, by deed bearing date on that day, conveyed to the Paterson and Hudson river railroad company a part of the said demised premises, (including a part of the mill-pond,) at the abutment of the dam, and upon which the dam could be most conveniently extended, and from which all necessary materials could be procured according to the terms of the lease. By the construction of the railroad, and the making of the necessary excavations, by said company, the windings of the streams by which the pond was supplied with water were intercepted, and their courses changed, whereby the mills were deprived of their usual supply of water, and the complainant was unable to remedy the evil by the means granted to him in the lease, without exposing himself to an action by the railroad company, for overflowing the land above the dam conveyed to them by Van Winkle. Soon after the conveyance to the railroad company, Van Winkle died, having duly executed his last will and testament, and appointed his wife Caty, and Cornelius G. Van Riper and Garret G. Oldis, executors thereof, who proved the will. The complainant continued to pay rent for the premises until May, 1832, and he has always been ready to settle for the rent since that time, according to the terms of the lease, upon a fair allowance being made for the privileges of which he was deprived as aforesaid, of which the executors had due notice. The executors refused to comply with the offer, and threatened the complainant with an ejectment unless the rent specified in the lease was paid without abatement; and at September term, 1834, an action of ejectment was instituted against the complainant, at the instance of Caty Van Winkle, executrix as aforesaid, to dispossess the complainant of the demised premises, by reason of the non-payment of the aforesaid rent. Upon a fair settlement of the claim, and an allowance to the complainant for the damage sustained by him in consequence of the sale by Van Winkle to the railroad company, no rent whatever was due for the premises at the time of the commencement of the action of ejectment.

The lease, by its terms, expired on the 7th day of March,

[Berry v. Ex'rs of Van Winkle.]

1835, but the executors of Van Winkle have made no offer to renew the lease, or to have the improvements valued. Some days after the expiration of the lease, the complainant having furnished each of the executors with a copy of that part of the lease containing the covenants binding on each party at the expiration of the term, requested that they would appoint some persons to value the improvements, and to do what of right should be done between the parties, according to the terms of the lease, but the executors have failed to comply with the complainant's request, or to give him any satisfaction in the premises; the executrix replying, " that she would have her rent before she would do any thing."

The bill prays that the executors may be decreed to perform the covenants in the lease on their part to be performed ; that it be referred to a master to take an account of the rent, and to approve a proper person as surveyor to make a survey of the premises mentioned in the lease, and the improvements thereon, and of such part of said premises as was conveyed to the Paterson and Hudson river railroad company ; and that the master take an account of the yearly value of that part of the premises so conveyed to said company; and ascertain the damages sustained by complainant by reason of the deprivation of the privileges aforesaid, and give credit therefor upon the amount of rent ascertained by him to be due the executors ; that a receiver be appointed to take charge of the premises, and that an injunction issue to restrain proceedings at law touching the matters in controversy.

On filing the bill an injunction issued, as prayed for ; and on the 20th of April, 1835, an order was made for the appointment of a receiver.

The executors, by their answer, filed on the 16th of July, 1835, admit the lease from Van Winkle to Buckley, the transfer of Buckley's interest to the complainant, and his possession of the demised premises, as set forth in the bill of complaint. They also admit the agreement made by Van Winkle with the Paterson and Hudson river railroad company, and the convey-

ance of a part of the demised premises to said company, as charged in the bill. They state that said company is a corporation created by the legislature of the state of New-Jersey, and that by their charter they were authorized to construct their railroad as located over the demised premises, without the consent or agreement of Van Winkle; and that previous to any agreement made for that purpose by Van Winkle, the company had laid out and located their railroad over the demised premises, afterwards conveyed to them by Van Winkle, as they had by their charter full right to do. They deny that any part of the land so conveyed to the railroad company was covered by the pond or dam, or that the construction of the road in any wise interfered with the extension of the dam. They admit that the company took possession of the land conveyed to them and constructed their road, as charged in the bill, but deny that the company used any stone or materials which the complainant, under the lease, was entitled to use in the extension of the dam, or that the road interfered with the supply of water in the pond. They admit the death of Van Winkle, the probate of his will, and that certain improvements have been made upon the premises, which by the terms of the lease were to be left upon the premises upon certain conditions, at the expiration of the term. They admit the payment of rent up to the month of May, 1832, as charged in the bill, and the notice alleged to be given by the complainant to the executors, but deny the right of the complainant to any deduction from the rent since accrued on account of damages alleged to be sustained by the complainant, and any admission of such right by the executors or either of them. They admit that an action of ejectment was commenced in the supreme court at the term of September, 1834, by Caty Van Winkle, as devisee for life of said premises, under the will of the said Isaac J. Van Winkle, but not as executrix, and that said action was brought to dispossess the complainant of the premises by reason of his non-payment of the rent due for said premises. They insist that they are entitled to receive the rent without any deduction; that the complainant, by neglecting and refusing to

[Berry v. Ex'rs of Van Winkle.]

pay the rent, had forfeited all right to said premises under the lease, and was liable to be ejected therefrom; and that, after the commencement of the action of ejectment, they declined entering into any negociation with the complainant relative to his improvements on the premises, as they were advised such negociation would operate as a waiver of the forfeiture upon which the ejectment was brought.

The cause came on for final hearing upon the pleadings and proofs.

*Gifford* and *A. Whitehead*, for complainant.

*J. Speer* and *I. H. Williamson*, for defendants.

THE CHANCELLOR. Isaac J. Van Winkle, in his life-time, and on the 7th of March, 1814, leased to James Buckley, for the term of twenty-one years, a saw-mill and premises in the county of Bergen. By this lease it was agreed that the lessee or his assigns might, at any time during the demise, at his own cost, erect a carding and fulling-mill, or any other machinery, upon the demised premises, and at the expiration of the lease that all improvements made thereon should belong to the lessor, he paying for the same. If the parties could not agree on their value, the improvements were to be fairly estimated by two impartial men chosen by them, and if the two men so chosen could not agree they were to choose a third, and the amount fixed by any two of them was to be binding, unless the lessor should renew the lease at the same rate for twenty-one years longer. It was further agreed, that the lessee might get from the land of the lessor as many stones as would be necessary to erect the buildings to the first story, and to complete the mill-dam; and in case he desired to extend the dam, he was at liberty to do so to the extent of the lessor's land, the same to belong to the lessor at the end of the lease without any compensation therefor.

The complainant represents by purchase and legal transfer, the original lessee in this lease, and the defendants are the personal

[Berry v. Ex'rs of Van Winkle.]

representatives of the lessor.  Improvements have been placed
on these premises under the lease, for which the party is entitled
to compensation.  The bill was filed after the lease expired, and
seeks the aid of the court to procure compensation for the im-
provements, by compelling the defendants to fulfil their agree-
ment in respect to the same, and also damages for various other
alleged breaches of the covenants.

It is alleged that, by a sale by the lessor of certain of his
lands to the Paterson and Hudson river railroad company, while
the lease was running, for the construction of their road, the
complainant was damnified by being cut off from his usual sup-
ply of water, by being deprived of his facilities in procuring
gravel and stone for erecting his dam, and from extending his
dam as he desired to do.

The question now to be settled is, whether this court will grant
any relief, and if so, to what extent.  If it was a new question,
and resting upon general principles alone, I should be strongly
inclined to refuse all interference, and leave the parties to their
remedies at law.  The lease expired before the suit was brought,
and therefore the bill is purely for compensation and damages,
and the courts of law are able and better able, through the inter-
vention of a jury, to ascertain and settle what amount, if any,
is due from one party to the other.  In all cases resting in dam-
ages only, it is certainly more in accordance with our system of
jurisprudence that they should be ascertained at law, where a jury
can pass upon them, and the witnesses are seen and examined
in open court.  But a rule has been settled on this subject to
which I shall adhere, without pressing any further the jurisdic-
tion of the court.  The cases of *Denton* v. *Stuart*, 1 *Cox*, 258 ;
of *Greenaway* v. *Adams*, 12 *Vesey, jun.* 395, and of *Phillips*
v. *Thompson*, 1 *Johns. Ch. Rep.* 131, all sustain the principle
of giving relief by way of damages on a bill for a specific per-
formance, when the defendant has placed it out of his power to
make a conveyance of the specific property.  Chancellor Kent,
however, in two later cases, *Hatch* v. *Cobb*, 4 *Johns. Ch. Rep.*
559, and *Kempshall* v. *Stone*, 5 *Johns. Ch. Rep.* 194, refused

to make a decree for damages where no specific performance could be had, on the ground that this court ought not to exercise jurisdiction in such case except under very special circumstances. The cases (which will be found somewhat contradictory on this point) are referred to in a note in 2 *Story's Equity*, 108. In the present case I shall entertain jurisdiction to the extent settled in this court in the case of *Copper and others* v. *Wells and others*, *Saxton*, 10. That case was in many respects like the present ; the lease had expired when the bill was filed, and valuable improvements had been put on the premises which were *to be paid for by* the lessor. The chancellor granted his aid expressly on the ground that the complainant could only have adequate relief in this court. This charge for improvements is, in equity, a lien on the property. If driven to his remedy at law, the complainant might entirely lose his claim.

While this case establishes a rule by which compensation may be obtained in this court for permanent improvements placed on leased premises, it by no means sanctions the whole relief sought in this case, and I am not disposed to go farther. There is a peculiarity in the claim of a lessee for compensation for valuable and permanent improvements which pass to the lessor at the expiration of the lease, but there is no good reason why this claim for alleged infringements on his rights during the whole term, should be drawn in question in this court.

It was objected that the complainant had not entitled himself to relief, as he was bound first to have sought the appointment of indifferent persons, under the provisions of the lease, to settle the amount. Without examining into whose duty it was to have taken the first steps in this business, the answer discloses enough to remove the objection. It is there admitted that the complainant, shortly after the lease expired, did apply to the defendants and request that he might be paid for his improvements, and that he was told they would do nothing until the rent was paid. The defendants clearly put an end to any negociation respecting the improvements until the rent should be paid, and

[Berry v. Ex'rs of Van Winkle.]

they cannot now set up that the offer was not made to arbitrate respecting the amount.

I shall refer the case to a master to ascertain the value of the improvements at the termination of the lease, and the amount due the defendants for rent, to the end that a final decree may be made for the amount due the complainant after deducting the rent. As to the other damages, for which the aid of the court is asked, I shall leave the parties to their legal remedies.

Reference to a master.