# SUPREME COURT.

## Flora C. Clark agt. Hannah M. Jacobs and others.

*Vendee's lien for purchase-money paid — how enforced — Purchaser with notice — Power of sale — Will, construction of — Limited bequest — Equitable interests.*

A lien exists in favor of a *vendee* when the purchase-money, or a part of it, has been prematurely paid by him, before a conveyance of the land.

Such lien will be protected, in favor of the vendee, against every one but a *bona fide* purchaser without notice of the lien.

But upon a purchase of land, which involves a breach of trust, as when a trustee himself undertakes to purchase the trust estate for his own advantage, no such lien arises in his favor for moneys paid.

Nor does such lien exist when a purchaser has, by his own default, abandoned the contract of purchase.

Where persons entered into a contract for the purchase and sale of land, and a part of the purchase-money was paid by the vendee, and a conveyance was executed and placed in *escrow*, to be delivered when the residue of the purchase-money should be paid, and the lands were afterwards conveyed away, so that the contract of purchase could not be fulfilled:

*Held*, that the vendee could follow the land in the hands of persons who had taken title with knowledge of the vendee's equity, and that it was not necessary, in order to invoke equitable relief and enforce the lien out of and against the land, that the vendee should tender the balance of the purchase-money; that, under the circumstances, a tender was excused.

Where a purchaser of land takes the title with notice of the equitable rights of a third person, he holds the property subject to such equitable rights (*Brown* agt. *Goodwin*, 1 *Abb. N. C.*, 452).

*Power of sale* — Where an executor, clothed with a *power of sale* under a will, entered into an agreement with the persons beneficially interested under the will to purchase the land from them:

*Held*, that the agreement was not necessarily void. But if the transaction could be questioned it was for those interested in the land under the will, and not for strangers, to object.

*Will*—Where a testator in the opening sentence of his will, in view of a dangerous voyage upon which he was about to enter, declared that he deemed it his duty to make a will "*for the benefit and protection of my wife and children,*" who are named, and then in one connected sentence in his will disposes of his property and appoints an executor in these words: "I do, therefore, make this my last will and testament giving and bequeathing to my wife, Caroline, all of my property, real or personal, of whatever name or nature it may be in, that I am now possessed of or is owned by me, &c., &c., and do appoint my wife, Caroline, my true and lawful attorney and sole executrix of this my will, to take charge of my property after my death, and retain or dispose of the same for the benefit of herself and children above named:"

*Held,* that the gift to the mother was not absolute, but that the children had, with their mother, a substantial interest in the property which a court of equity would recognize and protect.

Words in the opening clause of a will, as all other material parts, are to be considered in construction (*Youngs* agt. *Youngs,* 45 *N. Y.,* 254).

Precatory expressions in a will have been construed as creating a trust where the objects to be benefited were well described, and the property, to which the trust should attach was sufficiently defined.

*Lambe* agt. *Eames* (*L. R.* [6 *Chy. App.*], 597) and *Markett* agt. *Markett* (*L. R.* [14 *Eq.*], 49; *S. C.,* 2 *Eng. R.,* 412) distinguished.

*Taggart* agt. *Murray* (53 *N. Y.,* 233) and *Smith* agt. *Bowen* (35 *id.,* 83) applied.

*Special Term, December,* 1878.

DEMURRER to complaint, the grounds of demurrer assigned, being that the complaint does not state facts sufficient to constitute a cause of action.

The demurrants are the defendants The Mutual Life Insurance Company and William H. Leup.

*Edmund Coffin, Jr.,* for plaintiff.

*Turner, Lee & McClure,* for defendants.

*R. A. Piper,* for defendant Leup.

VAN VORST, *J.*— A lien in favor of the vendor, for the purchase-money, where the title to the land had passed to the vendee, is well recognized by numerous cases.

A lien in favor of the vendee, when the purchase-money,

Clark agt. Jacobs.

or a part of it, has been prematurely paid before a convey-
ance, is not so well supported by authority in this state.
But sufficient has been decided to recognize and declare the
existence of such lien.

In *Chase* agt. *Peck* (21 *N. Y.*, 589) DENIO, J., denominates
this lien as an equitable mortgage. He says: "It will be
allowed in favor of a vendor for unpaid purchase-money, or
of a purchaser, who has advanced his money, on the faith of
a contract, for a conveyance."

And he again says: "It is well settled that the interest of the
vendee will be protected against every one but a *bona fide*
purchaser or incumbrancer, without notice of the vendee's
equity. In such case the vendee is considered in equity as
the owner and the vendor as his trustee."

In the English court of chancery this doctrine has been laid
down in numerous cases.

It is considered at length, and well sustained in *Wythes*
agt. *Lee* (3 *Drewry*, 396), and is upheld both upon the ground
of natural justice and authority.

The vice-chancellor says: "When a contract is made and
then goes off, it appears to me, that in principle and justice, the
equity of the purchaser, to a lien on the estate, ought to stand
on as good footing as the lien of a vendor after conveyance"
(*Rose* agt. *Watson*, 10 *H. L. C.*, 672; *Parks* agt. *Jackson*, 11
*Wend.*, 442; *Abraman Iron Works* agt. *Wickens*, 4 *L. R.
Chy. Ap.*, 101, 109).

This lien exists not only against the vendor but as against
a subsequent purchaser or mortgagee who has notice of the
payment having been made.

But it is urged by the learned counsel for the defendants,
that no lien could arise, in this case, for the reason that the
agreement to purchase, made by the plaintiff's father, under
which she claims, was made by him with the devisees and
persons interested under the will of Maria Clark, deceased, in
the land in question, by which will he was constituted execu-
tor and trustee.

James A. Clarke, the plaintiff's father, was executor under Maria Clark's will and as such was appointed trustee and was invested with a power of sale, and was directed to divide the proceeds among the children and grandchildren of the testatrix.

Had he, as a trustee under this will, attempted to exercise the power conferred upon him by selling and conveying, as executor and trustee, to himself, as an individual, such transaction, upon objection from those entitled to object, would not be upheld and he could not have acquired any lien upon the property for any moneys he might claim to have advanced towards the completion of such transaction.

A sale to himself would be a breach of trust, and no equitable right, of the nature of the one here sought to be enforced, could arise from it. Nor would such lien exist when a purchaser has, by his own default, abandoned the contract.

But the complaint alleges that the agreement was made by James A. Clarke with the devisees and persons beneficially interested in the land; that the consideration, in so far as it has been paid, was received by them and that in execution of the agreement of purchase and sale, a deed has been made and signed by them and placed in *escrow* to be fully delivered when the residue of the purchase-money shall be paid.

In entering into this agreement to purchase the executor and trustee was not attempting to execute the power of sale conferred upon him by the will.

Now although equity disfavors the purchasing of property by a trustee of the *cestui que trust*, yet such transaction is not absolutely void; not necessarily so. The *cestui que trust* may take measures to avoid it. But he has ability to stand satisfied with the transaction. He may not wish to repudiate it and is not obliged to do so. He may, upon consideration, adopt and sanction the act.

And as the persons beneficially interested in the land have, in fact, received, to their own use, the amount of the consideration paid and have made and executed a conveyance which

Clark agt. Jacobs.

is in *escrow* and do not appear to have repudiated the transaction, it is not for strangers to object and allege the invalidity of the agreement to purchase and sell.

This objection is personal to the *cestui que trust* in so far as the questions here to be considered are concerned (*Case* agt. *Carrol*, 35 *N. Y.*, 385).

It is also objected, on the part of these defendants, that the plaintiff does not, by her complaint, announce a readiness to perform the agreement, that she expresses no willingness to pay the residue of the purchase-money, and take the land, and makes no tender.

If the "*status quo*," at her father's death, continued up to the commencement of this suit, and this was an action against the devisees and beneficiaries under the will of Maria Clarke, I would conclude that the plaintiff's remedy would be by an action to compel a specific performance of the agreement in which it might be determined, whether or not, for any reason, the agreement should be performed and if not whether the consideration-money should be returned.

But upon the death of the plaintiff's father, the office of trustee, under the will of Maria Clarke, became vacant and Herbert B. Turner was appointed, by this court, trustee, in his room, to carry into effect the trusts created by the will in so far as they remained unexecuted.

The power in trust to sell the real estate had not been exercised by the trustee, James W. Clarke.

But Herbert B. Turner, the substituted trustee, sold and conveyed the premises to Caroline M. Clarke, the mother of the plaintiff, for the consideration of $8,000.

Caroline M. Clark, on the same day in which she received the deed executed a mortgage to the defendant, The Mutual Life Insurance Company, to secure the payment of a loan made to herself of $8,000. This mortgage is now outstanding. Afterwards she executed a mortgage to James W. Clarke, for $3,000, to secure a loan to herself of that amount.

This mortgage has been foreclosed and, under the decree

made therein, the premises have been sold and purchased by Michael Ryan who afterwards conveyed them to the defendant William H. Leup.

The complaint alleges that, at the time of the execution and delivery of the several conveyances and mortgages, the several parties to them had full knowledge of all the facts and circumstances which are detailed in the complaint.

The plaintiff alleges that all these transactions were without her knowledge or consent and that she has received nothing on account of the same.

The conveyance by Mr. Turner, the trustee, in execution of the power of sale, under the will of Maria Clarke, deceased, and the subsequent mortgaging of the same premises and the sale and conveyance under one of the mortgages, dispenses with an action for a specific performance and justifies an action to enforce a lien for the purchase-moneys paid, unless there be some legal or equitable objection to be urged against the lien itself.

A tender now, by the plaintiff, of the balance due of the consideration-money, either to the devisees, under the will of Maria Clarke, or to Mr. Turner, the substituted trustee, would be an idle ceremony. The land itself has been conveyed away.

It is out of the power of the parties to fulfill the contract (*Shaw* agt. *The Republic Life Ins. Co.*, 69 *N. Y.*, 293; *Crist* agt. *Armour*, 34 *Barb.*, 378).

If the plaintiff has any right at all it can only be enforced through an action to have the lien declared and enforced upon, and out of the lands in question, in the ownership and possession of these defendants, who, according to the allegations of the complaint, acquired their rights and interests with full knowledge of all the facts out of which the lien is claimed to have arisen.

For while it is beyond question that a purchaser for a valuable consideration, without notice of a prior equitable right, obtaining the legal title at the time of his purchase, is entitled

to priority in equity as well as law according to the maxim, that "when equities are equal the law shall prevail," at the same time it is equally true that if the purchaser, though he does pay a valuable consideration, have notice of the equitable rights of a third person he shall hold the property subject to such equitable right (*Brown* agt. *Goodwin*, 1 *Abbott's New Cases*, 452–462).

It does not appear whether or not the persons beneficially interested in the land, under the will of Maria Clarke, joined in the conveyance to Caroline M. Clarke. Sufficient, however, is alleged in the complaint to show that the sale was made by Mr. Turner, in execution of the powers under the will, and that the trustee could convey away the legal title to the land and that the consideration paid was to the use of the beneficiaries under Maria Clarke's will.

The next question which arises, and it is one of importance, is whether the conveyance, to the plaintiff's mother, is a legal answer to the plaintiff's action?

The answer to this question involves a consideration of the will of James A. Clark, the plaintiff's father, and of the rights of Caroline M. Clarke and her daughter thereunder.

If Mrs. Clarke, under her husband's will, succeeded in her own right to all his property, including his interest in the premises in question then the plaintiff has no interest or standing to maintain this action.

For, under such circumstances, on the payment by her of the balance of the purchase-money, she would have been entitled to a conveyance from the devisees and beneficiaries, under the will of Maria Clarke, who contracted with her father or from the substituted trustee, Mr. Turner, if he adopted the contract and chose to carry it out.

In considering a will to determine its legal effect no material part is to be disregarded.

The words of the opening clause of a will are not without their influence in determining the intention of the testator

Clark agt. Jacobs.

(*Youngs* agt. *Youngs*, 45 *N. Y.*, 254; *Earl* agt. *Green*, 1 *John. Chy.*, 494; *Betts* agt. *Betts*, 4 *Abb. N. C.*, 317, 426.)

The testator, in the opening sentence of his will, in view of the dangerous voyage upon which he was about to enter, declares that he deemed it his duty to make a will, in his own words, " for the benefit and protection of my wife and children," who are named.   He then, in one clause, in fact in one connected sentence, disposes of his property and appoints a person to execute his will, in these words :

"I do, *therefore*, make this my last will and testament, giving and bequeathing to my wife Caroline all of my property, real or personal, of whatever name or nature it may be in, that I am now possessed of, or is owned by me, or that I may have or be possessed of at the time of my death, or that I may inherit, or fall to me by relationship, or by gift before or after my death, and do appoint my wife Caroline Maria, *my true and lawful attorney* and sole executrix of this my will, *to take charge of my property* after my death, and *retain* or *dispose* of the same for the *benefit of herself and children* above named."

No words in the will are, however, underscored, but I have chosen so to designate parts which indicated to me the purpose and object of the will, and the dispositions intended to be made of the property.   The word " *therefore*," in the opening part of the disposing clause of the will, refers to the motive antecedently expressed, the " *duty*" to make a disposition of his property for the benefit and protection of his wife and two children.

This duty the testator attempts to meet and discharge, by the disposition of his property which follows, and which it is obvious is emphasized in the closing words of the sentence, by which he commits his property to the charge of his wife, as his *attorney* and *executrix*, to be retained or disposed of, for the benefit of herself and his children.

In his expressed desire to benefit and protect his two

Clark agt. Jacobs.

children equally with his wife, through his property, he had followed the instincts of nature, and spoke its language, and he properly calls it a duty.

The question arises, has he failed in his written words to carry out his intentions, or to attain his object?

Is it true, in the words of the learned counsel for the defendants, in his brief submitted, "that the devise to Mrs. Clark is full and complete, and it is difficult to imagine a more elaborate grant in fee simple absolute, not burdened by any condition, or curtailed by any limit of estate?" If that be so I do not see but that the testator has wholly failed to carry out his intentions.

The plaintiff alleges in her complaint, that she has received nothing in any way from the estate of her father, or any one on account of same. That Caroline M. Clark (the executrix) is insolvent, and that there are no assets remaining belonging to her father's estate, except such right as may arise from her interests in this action.

The testator did not intend, I am persuaded, to construct a will, by the terms of which a wrong to his child should be accomplished, and she be deprived of participating in the benefit and protection which his property would afford.

The idea advanced on the behalf of the defendants is, that the power of the executrix under the will, to dispose of the property for the benefit of herself and children is discretionary, "and imposed no trust, on her in favor of the children." That it was "a mere recommendation of the children to her charitable consideration." That the testator intended "to cut off his children and throw them entirely on his wife's bounty." Such, in words, is the defendants' claim, and it amounts to this, that the dominion of the executrix over the property was absolute and unfettered, to dispose of it, spend it, or deal with it and its proceeds as she liked.

I cannot accept such conclusions. I cannot think that the testator meant merely to recommend his children to the charitable consideration of their mother, or leave their right to a

participation in his estate, dependent exclusively upon her will or disposition.

On the other hand I conclude that he meant to give them, with her, a substantial interest in his property, one which a court of equity would recognize and protect.

In *Lamb* agt. *Eames* (*infra*), cited by defendants' counsel, JAMES, L. J., says: "I cannot agree that she (the widow) is to take what she likes, and that what she has not spent is to go, at her death, for the benefit of her children." *Crockett* agt. *Crockett* (2 *Ph.*, 553) was cited which decided that the children had some interest, and that the widow satisfied the obligation.

Precatory expressions in a will have been construed as creating a trust when the objects to be benefited were well described and the property to which the trust should attach was sufficiently defined (*Paul* agt. *Compton*, 8 *Vesey*, 380; *Hawkins on Wills*, 165, *and cases cited*).

But the intention of the testator with respect to his children and their interest in his property is not expressed in words merely recommendatory. I apprehend that the widow has no discretion to withdraw from her children a participation, with herself, in the property.

The learned counsel for the defendant refers to *Lamb* agt. *Eames* (*L. R.* [6 *Chy. App.*], 597) where a testator gave his estate to his widow "to be at her disposal in any *way she may think best* for the benefit of herself and *family.*"

That case is clearly distinguished from the present. All that was said with respect to the purpose of the testator is contained in the words above quoted. There was no prefatory statement as in the case under consideration. In that case, by the terms of the gift, the widow might dispose of the property in any way she might think best. No such latitude, in terms, is given by Mr. Clarke to his widow. Should she retain the property it was for the joint benefit of herself and children; if she disposed of it it must be for the same ends.

Besides, in the case cited, we have the word "family," an

indefinite expression. Such a trust, on account of the uncertainty of its objects, it would be impossible for a court well to execute. The court so states.

There is no uncertainty in the will under consideration. The persons to enjoy the property are all named, and there is no difficulty in executing the will in their favor. *Mackett* agt. *Mackett* (*L. R.* [14 *Eq.*], 49; *S. C.*, 2 *Eng. R.*, 412) is also clearly distinguishable from the present.

In that case there was an attempt to cut down a prior unqualified gift. The words of the gift were "to and for her proper use and benefit forever."

There was a subsequent direction in regard to an application of the proceeds. The testator's intention was clearly expressed, without qualification, to vest Mrs. Mackett with an absolute interest in the property, unaffected with any trust with respect to the proceeds. The subsequent words used were ineffectual to cut down the gift.

It is true that to cut down an absolute gift the subsequent portions of the will must show a clear intention on the part of the testator to work such result.

I think the preface to the will under consideration and the concluding words of the disposing clause show that the gift to the wife was not absolute.

To ascertain the testator's intention the entire sentence must be read as a whole. A delivers his horse to B and says I give you this horse, to be retained or disposed of by you as my attorney, for the benefit of yourself and C and D, your children. That is not an absolute gift of the horse to B.

I do not think that there are repugnant clauses in this will to be reconciled. I think the intention of the testator to create the trust for the benefit of his wife and children is plain. But if there was a repugnancy the rule laid down in *Taggart* agt. *Murray* (53 *N. Y.*, 233), ANDREWS, J., is that "effect is to be given, if possible, to all the provisions of the will, and no clause is to be rejected, or interest intended to be given

sacrificed, on the ground of repugnance when it is possible to reconcile the provisions supposed to be in conflict."

In accordance with this rule it was held that subsequent clauses in a will are not incompatible with, or repugnant to, prior clauses in the same instrument, where they may take effect as qualifications of the latter, without defeating the intentions of the testator in making the prior gift.

If the contention of the counsel for the defendants is correct the children have no rights or interests which their mother was bound to recognize. She can, without any just ground of complaint from them, dispose of all the proceeds of this estate to her own use.

Now, the heir is not to be disinherited without an express devise or necessary, implication, such implication imputing not natural necessity, but so strong a probability, that an intention to the contrary cannot be supposed (*Lyner* agt. *Townsend*, 33 *N. Y.*, 558; *Quinn* agt. *Hardenbrook*, 54 *id.*, 83).

The case of *Smith* agt. *Bowen* (35 *N. Y.*, 83) is very like the one now under consideration. It supports the view that the gift to Mrs. Clarke was a trust, in which her children had a beneficial interest which could not be impaired or destroyed by the act of the trustee in breach of the trust, and which would follow the land in the hands of any person to whom it was conveyed by the trustee with knowledge of the trust.

The question then arises, did the conveyance to Caroline M. Clarke by Mr. Turner, the trustee, absolutely extinguish the lien for the purchase-money paid by the husband? I think not.

Had she been legally entitled under her husband's will to receive a conveyance to herself, for her own use, the lien would be gone. But she was not so entitled. The conveyance was not made to her in any representative character, but as an individual. She was dealt with as such. She paid the consideration, and received the money loaned as such. It is

Clark agt. Jacobs.

not necessary to decide whether or not Mrs. Clarke could have purchased this property, and paid the consideration in any representative character under her husband's will. She did not undertake to do so.

The mortgagees when they loaned their moneys and took their securities upon the land, as appears by the complaint, acted with their eyes open to all the facts and circumstances, and are chargeable with notice of the plaintiff's equitable rights and interest. The purchaser under the foreclosure sale is in the same condition.

The loans made to Mrs. Clarke, for which the mortgages were given, were made to herself, and the mortgages were executed in her individual capacity. They cannot well be interposed by the mortgagee and person who took through the mortgage sale, with notice, to defeat the plaintiff's equitable claim and interest, which attached to the land, and has not been lost. It appears by the complaint that she has succeeded by assignment to the interest of her mother and brother under her father's agreement to purchase. But I do not think that she took any thing under such assignment. As to her mother and brother they would be estopped from setting up any claim, for the reason that as to the mother she took a conveyance of the land, and the brother recognized his mother's title by taking a mortgage thereon himself, for money loaned by him on its faith. But as to her own interest in one-third of the purchase-money paid by her father, I do not find that the plaintiff has done or omitted any thing to prejudice her claim, and to that extent I think the complaint discloses a cause of action.

There are difficulties in the plaintiff's path even to the extent of relief found to be in her favor. The questions involved are serious, and the conclusions reached, not free from doubt, even in my own mind. Yet the result appears to me to be just and equitable.

It is suggested by the plaintiff's counsel that the trust created under the will of James W. Clarke was void and that

in consequence the fee and title to his property vested immediately in the mother and two children. It has not seemed important to pass upon that question. If that be so, however, it makes the plaintiff's right to recover one-third of the purchase-moneys and to enforce her lien to that extent, the clearer.

There must be judgment for the plaintiff, on the demurrer, with liberty to the defendant to answer on payment of costs.