Complainant, vendee, entered into a contract with defendants, vendors, for the purchase of certain land, and pursuant to the terms of that contract paid defendants $2,000 of the purchase price. The defendants being unable to perform, complainant brings his bill in this court to impress a lien upon said lands for the $2,000 paid.
Defendants moved at final hearing, without previous notice, to dismiss the bill on the ground that equity had no jurisdiction, basing their contention on Grant v. Olsan, 104 N.J. Eq. 242;144 Atl. Rep. 870, and Bailey v. B. Holding Co., 104 N.J. Eq. 241; 144 Atl. Rep. 870, both of which cases were decided on the same day.
The only question before the court is whether on the facts above stated there is an equitable lien in favor of a purchaser to secure the return of his deposit where there is a default by the vendor, in this case specifically a defect of title. If there is such an equitable lien, chancery has jurisdiction; if there is not, the action is at law. *Page 628 
The doctrine that a purchaser has a lien in equity on the premises covered by the agreement of sale for the return of his purchase price in the event that the vendor defaults was established long before the American Revolution in the leading case of Burgess v. Wheate, 1 Eldon 177, 211; 1 Black 123;96 Eng. Rep. 67, 79 (1759), by a distinguished court composed of Lord Keeper Henley (later Lord Northington), Lord Mansfield, chief justice of the king's bench, and Sir Thomas Clarke, master of the rolls, wherein the eminent master of the rolls said:
"So where the money was paid prematurely the money would be considered as a lien on the estate in the hands of the vendor."
This doctrine, which prevailed before the establishment of our court of chancery, became, on its establishment, a part of the jurisdiction of that court, protected by the constitutional inhibitions against the encroachments of other courts or the legislature. Flanigan v. The Guggenheim Smelting Co.,63 N.J. Law 647.
Sugden (later Lord St. Leonards), in the first edition of his celebrated work on Vendors and Purchasers, published in 1805 (p. 671), recognized the validity of the proposition and citedBurgess v. Wheate as his authority.
Three years later, Lord Eldon in Mackreth v. Symmons, 15Ves. Jr. 329; 33 Eng. Rep. 778, 784 (1808), referred with approbation to the rule that a vendee has a lien for his deposit money, as follows:
"In Burgess v. Wheate, 1 Black 123, Sir Thomas Clarke lays down the rule both as to a vendor and a vendee thus: `Where conveyance is made prematurely before money paid the money is considered as a lien on the estate in the hands of the vendee; so where money was paid prematurely the money would be considered as a lien on the estate in the hands of the vendor for the personal representative of the purchaser; Tardiff v. Scrugham (citedAmb. 725, 6; 1 Bro. Ch. C. 423; before Lord Camden in Chancery December 8th, 1769) is very material upon this point; as it is represented (1 Bro. Ch. C. 423, Blackburn v. Gregson) as a case in which the lien is held to attach upon the two moieties of the estate * * *." *Page 629 
In Oxenham v. Esdale, 3 Younge J. 262; 148 Eng. Rep. 1177
(1829), Lord Chief Baron Alexander said:
"If there exists anything which may be called a lien upon the instruments, it is vested in the purchaser as security for the money which he has paid."
In Dinn v. Grant, 5 De G. S. 451; 64 Eng. Rep. 1194
(1852), Sir James Parker, vice-chancellor, said:
"He would have been entitled to a lien if the contract had failed in consequence of the vendor's default."
In Wythes v. Lee, 3 Drew. 396; 61 Eng. Rep. 954 (1855); on appeal 25 L.J. Ch. 389; 2 Jur. N.S. 8, 130; 4 W.R. 316, Sir R.T. Kindersley, vice-chancellor, held that both upon authority and reason the vendee has a lien for his deposit. He stated that he viewed the question from three angles, one, natural justice, two, equity and justice; and three, upon authority. He says at page 403, et seq.:
"It does appear to me that it is consistent with natural justice that if a purchaser on the faith of the contract being completed and the estate becoming his, has advanced money in payment or part payment for the purchase, he has advanced it under circumstances which entitled him to say `if you cannot complete not only are you bound to give me back my money but I have a right to a lien on the estate * * *.' It appears to me that on principles of equity and justice the purchaser when the contract goes off has a lien * * *. Then the third point of view is with reference to the authorities, and it appears to me that they are in favor of the lien. Besides, some two or three dicta
which have been referred to the leaning of which is to some extent to support the doctrine of lien, we have in Burgess v.Wheate a clear enunciation of the proposition that such an equity does exist."
In Rose v. Watson, 10 H.L. Cas. 672; 11 Eng. Rep. 1187,1192 (1864), the house of lords, speaking through Lord Chancellor Westbury and Lord Cranworth, definitely reaffirmed the doctrine of Burgess v. Wheate, that a vendee has a lien for his deposit or purchase money paid, in the event of default by the vendor.
In Westmacott v. Robins, 4 De G.F. J. 390;45 Eng. Rep. 1234 (1862), the court of appeals in chancery held: *Page 630 
"Whatever difficulty there might have been in making an order in the original suit for repayment of the purchase-money which has been paid there is not as it seems to me, any difficulty in making such an order in the supplemental suit accompanied with the usual directions for enforcing the lien which as I apprehend the purchaser has upon the estate for the purchase-money which they have paid."
In Aberaman Ironworks v. Wickens (1868), 4 Ch. App. 101,109; 20 L.T. 89; 17 W.R. 221, the court said:
"According to the decisions which were referred to — the case of Wythes v. Lee and the case of Rose v. Watson, Wickens in the event of the purchase going off would have a lien * * *."
In Mycock v. Beatson (1879), 13 Ch. D. 384, the court held that a partner who was induced to enter a partnership by fraud could rescind and is entitled to a lien on the surplus assets of the partnership. Judge Fry (author of Fry on Specific Performance), said:
"I hold that plaintiff is entitled to the lien which he claims. I come to that conclusion on the authority of Rose v. Watson
and Aberamain Ironworks v. Wickens."
In Levy v. Stogdon (1898), 1 Ch. 478; affirmed
(1899), 1 Ch. 5, Judge Stirling said:
"If the vendor fails to perform a contract on his part the latter [purchaser] may in the absence of a stipulation to the contrary recover the deposit from the vendor. And further than that he is entitled to a lien on the subject-matter of the contract. That was settled by the case of Rose v. Watson."
In Cornwall v. Henson (1899), 2 Ch. 710; reversed on other grounds in (1900), 2 Ch. 298, Judge Cozens Hardy said:
"It is settled law that where a purchase goes off by reason of some default on the part of the vendor the purchaser has a lien upon the property for any part of his purchase-money which has been paid. See Rose v. Watson."
In Whitbread Co. v. Watt (1902), 1 Ch. 835; 71 L.J. Ch.424; 86 L.T. 395; 50 W.R. 442; 18 T.L.R. 465, Judge Cozens Hardy said: *Page 631 
"I think the lien for the deposit exists so long as and in every case in which the right to recover the deposit has not been lost by reason of the misconduct of the purchaser. In other words, when the contract goes off, either by reason of the default of the vendor or without any default on the part of the purchaser, the lien becomes operative."
In the Whitbread Case the court upheld the purchaser's lien even though the contract was terminated without any fault of the vendor, purchaser taking advantage of a provision permitting him to rescind upon the happening of a certain contingency.
In Ridout v. Fowler (1904), 1 Ch. 658, 663, the court said:
"It is necessary to consider a purchaser's rights in respect of the deposit which he has paid. He has a right to a lien for the repayment of his deposit which, according to Rose v. Watson — a case I recently followed in Whitbread Co. v. Watt, affirmed by the court of appeals — attached from the moment of payment conditional on this, that the purchase does not go off through his own fault."
These cases all definitely affirm the doctrine of Burgess v.Wheate. They prove beyond any shadow of doubt that the English court of chancery, so far back as the days preceding the American Revolution and the establishment of our court of chancery, had jurisdiction to impress an equitable lien on the premises under contract of sale in favor of the purchaser to secure the return to him of his deposit in the event of the vendor's default.
I know of no American jurisdiction which denies the vendee's right to this equitable lien. Judge Vann in Elterman v. Hyman,192 N.Y. 113; 84 N.E. Rep. 937; 127 Am. Rep. 862; 15 Ann. Cas.819, said:
"We find no well considered case in any state that denies a lien to the vendee even if payment is the only ground therefor, except such as withhold a lien from the vendor also."
A note to Larson v. Metcalf, 207 N.W. Rep. 382, in 45A.L.R. (at p. 358), lists many cases from twenty-three American jurisdictions affirming the vendee's right to such equitable lien and none denying it, including a decision by the United *Page 632 
States supreme court in Townsend v. Vanderwerker (1895),160 U.S. 171.
The view of the American courts on this head of equity jurisdiction is summarized in the case of Elterman v. Hyman,192 N.Y. 113; 84 N.E. Rep. 937, in which Judge Vann, speaking for the court of appeals of New York, said:
"The question remains whether a vendee, not in possession and with no special equity, has a lien for the amount paid on a contract for the purchase of land that can be foreclosed upon the default of the vendor. * * *
"In some cases in this state, and generally in other states which give a lien to the vendor, a lien has been decreed, although there was no equity except that arising from payment on the land, pursuant to a contract for the land, provided the vendor made default. Occidental Realty Co. v. Palmer, supra;Stevenson v. Spratt, 3 Jones S. 496, 503; Clark v. Jacobs,56 How. Pr. 519; Craft v. Latourette, 62 N.J. Eq. 206;49 Atl. Rep. 711; Bullitt v. Eastern Kentucky Land Co., 99 Ky. 324,327; 36 S.W. Rep. 16; Shirley v. Shirley, 7 Blackf. (Ind.)452; Coleman v. Floyd, 131 Ind. 330, 335; 31 N.E. Rep. 75;Galbraith v. Reeves, 82 Tex. 357; 18 S.W. Rep. 696; Newnan v.Maclin, 5 Hayw. (Tenn.) 241; Sautelle v. Carlisle, 13 Lea
(Tenn.) 391, 397; Wickman v. Robinson, 14 Wis. 493, 496;80 Am. Dec. 789. The question does not appear to have been before the supreme court of the United States, although it has declared that `the vendor is a trustee of the legal title for the vendee to the extent of his payment.' Jennisons v. Leonard, 21 Wall.
(U.S.) 302, 309; 22 L.Ed. 539.
"We find no well considered case in any state that denies a lien to the vendee, even if payment is the only ground therefor, except such as withhold a lien from the vendor also. Ahrend v.Odiorne, 118 Mass. 261; 19 Am. Rep. 449; Philbrook v. Delano,29 Me. 410. The doctrine is well established in England, where it is sometimes said to have originated as recently as 1855, but it was clearly announced nearly twenty years before the Revolutionary War by a court of which Lord Mansfield was a member. Burgess v. Wheat, 1 Blacks. *Page 633 123, 150. It was recognized by Lord St. Leonards in the first edition of his great work on Vendors and Purchasers, published in 1805 (page 671), and three years later by Lord Eldon inMackreth v. Symmons, 15 Ves. Jr. 329, 344. In 1855, however, the question arose directly, and, although the vendee was not in possession and there was no special equity in his favor, he was held to have a lien both upon principle and authority. Wythes
v. Lee, 3 Drew. 396, 403. In 1864 the question was fully discussed in the house of lords, and it was adjudged without dissent that the vendee has a lien, because every payment by him is pro tanto performance of the contract on his part and in equity transfers to him a corresponding portion of the estate.Rose v. Watson, 10 H.L. Cas. 672. * * *
"Lord Cranworth, who delivered the other opinion concurred with the lord chancellor, and added: `There can be no doubt, I apprehend, that when a purchaser has paid his purchase-money, though he has got no conveyance, the vendor becomes a trustee for him of the legal estate, and he is in equity considered as the owner of the estate. When, instead of paying the whole of his purchase-money, he pays a part of it, it would seem to follow as a necessary corollary that, to the extent to which he has paid his purchase-money, to that extent the vendor is a trustee for him; in other words, that he acquires a lien exactly in the same way as if upon the payment of part of the purchase-money the vendor had executed a mortgage to him of the estate to that extent."
After citing as in support Whitbread Co. v. Watt, L.R.1902; 1 Ch. Div. 835; Sudg. Vend. P. (1st ed.) 671; Ibid.
(13th ed.) 672; 2 Story Eq. Jur. (8th Am. Ed.) §§ 789,1217, note; 3 Pom. Eq. Jur. (3d ed.) § 1263; 1 Perry Trusts
(5th ed.) § 231; 2 Jones Liens § 1105; 29 Am. Eng. Encycl.L. (2d ed.) 730; Fetter on Eq. § 156; Fry Spec. Perf. §§1479, 1482; 2 Washburn (6th ed.) § 1039; 2 Warvelle Vend. §30; Snell Eq. 146; Beach Trusts § 246; Reeve Real Property §449; Thom. Mort. § 63; 2 Wms. Vend. P. 948, 950, the court goes on to say:
"As the vendor has a lien because he owned the land but conveyed prematurely, and the vendee ought not to keep it *Page 634 
without paying for it, so, as it seems to me, the vendee has a lien because he has paid for the land pursuant to contract, and, as he cannot get the land, he has a right to get out what he put in on the faith of the land. The lien springs from the trust under which the vendor, as the legal owner, holds the land for the vendee, the equitable owner. Part payment creates partial ownership, and the vendee has an interest in the land itself to the extent of the payments made thereon. The contract and payment in full make him the equitable owner of all the land. The contract and payment in part make him the equitable owner protanto. When the vendor cannot convey, the equitable owner, wholly or in part, may assert his rights in a court of equity to get out of the land what he paid on it. * * *
"The right is correlative to that of the vendor conveying without payment. In either case, the res, or the subject of the contract, is the land, and whatever is paid on the land without corresponding conveyance, or conveyed without corresponding payment, is a lien on the land by virtue of parting with money on the faith of the land, or with land on the faith of the promise to pay for it. Payment is not made on the credit of the vendor, but on the credit of the land, and the purchaser's money, in equity is converted into land, or attached to it as a lien. The equitable ownership, when specific performance cannot be had, is converted into money by a judicial sale of the vendor's interest, which in effect is the foreclosure of an equitable mortgage."
The view is also well established in New Jersey to the effect that a vendee has a lien in equity for purchase-money paid in event of default by the vendor. As early as 1831 the existence of the vendee's lien was recognized here. Chancellor Vroom inCrawford v. Bertholf, 1 N.J. Eq. 458, 469, said:
"It is a rule in equity, that when a contract is made for the sale of an estate, equity considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase-money for the vendor. As a consequence of this, it is admitted that a purchaser may sell or charge the estate before the conveyance is executed: he may come into *Page 635 
this court claiming a specific performance, and compel the execution of a title. If he has paid any part of the purchase-money, he will be considered as having a lien on the property for the amount thus paid, and a court of equity will not compel him to surrender possession until he shall have been fully satisfied."
A leading case is Craft v. Latourette, 62 N.J. Eq. 206,
Vice-Chancellor Stevens said:
"The question argued in the briefs is whether the court will, under the circumstances detailed, give to the vendee a lien for the money paid by him upon so much of the property agreed to be conveyed as the vendor or her devisees have title to. The precise question does not appear to have been decided in any reported decision of this court, but I have no doubt that the lien exists. The leading case is Rose v. Watson, 10 H.L. 672. Lord Cranworth there uses the following language: `There can be no doubt, I apprehend, that when a purchaser has paid his purchase-money, though he has got no conveyance, the vendor becomes a trustee for him of the legal estate, and he is in equity considered the owner of the estate. When, instead of paying the whole of his purchase-money, he pays a part of it, it would seem to follow, as a necessary corollary, that to the extent to which he has paid his purchase-money, to that extent the vendor is a trustee for him; in other words, that he acquires a lien exactly in the same way as if, upon the payment of part of the purchase-money, the vendor had executed a mortgage to him of the estate to that extent.' The same view, annunciated as far back as 32 G. II (1758), by the master of the rolls, inBurgess v. Wheate, 1 W. Bl. 123, 150, is adopted by the text-writers. 2 Washb. Real Prop. 93, 94 (4th ed.); Pom. Eq.Jur. § 1263; 2 Jones Liens §§ 1105, 1106. So far as the New Jersey cases go, they tend to support this view. In Copper v.Wells, Sax. 10, it was held that where a specific performance has become impossible, the party aggrieved has a lien for the value of beneficial or lasting improvements made on the faith of an agreement which could not be executed because of a default in the opposite party. To the same effect is Berry v. VanWinkle's Exrs., 2 N.J. Eq. 269. *Page 636 
"The complainant is entitled to a decree adjudging that he has a lien upon the lot covered by the agreement to convey, to the extent of the money paid by him, and that the lot be sold to satisfy that lien."
Vice-Chancellor Pitney, in Cleveland v. Bergen Building andImprovement Co., 55 Atl. Rep. 117 (not officially reported), said:
"Now, upon these facts, the first question is: Could the defendant at any time have compelled the complainant to specifically perform the contract by accepting the conveyance of the premises and paying therefor? I think there can be but one answer to that question. The court would not compel the complainant to accept the title and pay therefor, and that disposes of the defendants' cross-bill, which prays specific performance. No offer was made at any time before suit commenced, nor was any made by the defendants' cross-bill or at the hearing, to apply to the matter of those lots fronting on Cleveland avenue a clause in the contract which provides that, in case either party shall fail or be unable to convey a good title to any lot or lots, then the amount of the consideration to be paid for said premises shall abate in proportion to the value that said portion shall compare to the whole property, and the contract shall not be deemed to be an entire contract but severable for that purpose only. And I am of the opinion that such clause does not apply to the defect set up.
"If, then, the land company could not in equity compel the complainant to complete the contract, does it not follow that the complainant may have relief for the money which she has already paid? And this seems to follow naturally from the other proposition, unless the complainant is for some reason estopped by reason of the defendants having changed their position irretrievably. I find nothing of that kind in the case. * * *
"The authorities on this interesting subject are quite in point. Professor Pomeroy, 3 Pom. Eq. Jur. § 1263, is clear and explicit, and the authorities he cites are quite in point." *Page 637 
 Section 1263, Pom. Eq. Jur., cited by Vice-Chancellor Pitney in Cleveland v. Bergen Building and Improvement Co., supra, is as follows:
"The lien of the vendee under a contract for purchase of land for the purchase-money paid by him before a conveyance is the exact counterpart of the grantor's — or, as it is commonly called, the vendor's — lien, described in the last section but one. In the latter case, the legal title has been conveyed to the grantee, and yet the grantor retains an equitable lien upon the land as security for the purchase price agreed to be paid. In the former case, the legal title remains in the vendor, who has simply agreed to convey, while the vendee, although having as yet acquired no legal interest in the land by virtue of the contract, does obtain a lien upon it as security for the purchase-money he has paid, and for the performance of the vendor's obligation to convey. In England, therefore, and in the American states where the grantor's lien has been adopted, the vendee's lien upon the lands contracted to be sold as a security for so much of the purchase price as he has paid prior to a conveyance, and for the performance by the vendor of his obligation, exists to the same extent against the same classes of persons, and governed by the same rules, as the corresponding lien of the grantor. The lien only arises, of course, when the vendor is in some default for not completing the contract according to its terms, and the vendee is not in default so as to prevent him from recovering the purchase-money paid."
In Goldstein v. Ehrlick, 96 N.J. Eq. 52, Vice-Chancellor Backes, and in Isserman v. Welt, 101 N.J. Eq. 634,
Vice-Chancellor Berry recognized the existence of the vendee's lien.
In Kohoot v. Gurbisz, 101 N.J. Eq. 757; 139 Atl. Rep. 223,
the court of errors and appeals affirmed a decree enforcing a vendee's lien.
It is therefore apparent that until the decisions of Grunt v.Olsan, supra, and Bailey v. B. Holding Co., supra, both decided on the same day, the existence of the vendee's lien had never been questioned in this state. The opinion in each case is brief.
In neither case is the existence of a vendee's lien questioned. In neither case is it said that a vendee has no lien in equity for the repayment of the purchase price. In fact, the subject of a vendee's equitable lien is not mentioned. It is unbelievable that the court of last resort intended to wipe out an ancient head of equity jurisdiction sub silentio without the slightest discussion. *Page 638 
It is evident from the two opinions in the court of errors and appeals, I think, that the court regarded the cases merely as involving suits to recover a deposit and search fees without any reference to a vendee's lien. The court in these two cases did not express itself as making new law, but merely as following precedent. In each the court bases its decision on San Giacomo
v. Oraton Investment Co., 103 N.J. Eq. 273; 143 Atl. Rep. 329,
where the court said:
"The system of courts set up in New Jersey under the constitution, article 6, section 1, the jurisdiction of the equity and common law courts is separate and distinct. The common law courts have exclusive jurisdiction to hear and determine controversies resting upon a purely legal basis and determined by the principles of the common law, such as a money claim or a simple debt and the like, whether due or not. The jurisdiction of the equity courts cannot be conferred over this class of subjects, by consent of counsel or acquiescence of a vice-chancellor. The court of chancery was not competent toadjudicate the claim. The first requisite to constitutejurisdiction is, the court must have cognizance of the class ofcases to which the one to be adjudged belongs. This principle iselementary and needs no citation of cases."
The San Giacomo Case did not involve any question of equitable lien. It merely stated a well recognized general principle that the court of chancery cannot acquire jurisdiction over purely legal controversies by the consent of counsel or the acquiescence of the trial court, and that its jurisdiction of a particular case depends on that case belonging to a class over which chancery has exercised jurisdiction. In other words, chancery jurisdiction is not a matter of consent; it is largely historical. But the San Giacomo Case does not attempt to adjudicate that a vendee does not have an equitable lien for the return of his money on default of the vendor's title.
In Bailey v. B. Holding Co., no lien was in fact prayed for. The nearest approach to it is the fourth prayer of the bill of complaint:
"4. That a decree may be made for the sale of said premises *Page 639 
to raise and satisfy to complainant the amount so found due with interests and costs."
This falls far short of praying an equitable lien.
In Grunt v. Olsan there was a prayer for an equitable lien for both the purchase price and search fees and expenses. It is well established that there is no equitable lien for search fees and expenses, and hence the prayer was too broad. The GruntCase followed the Bailey Case on the theory that it involved the same judicial problem for decision.
It may be well to contrast with these prayers for relief the prayers in the bill in the case at bar:
"2. That said Leonora Fischbein and Louis J. Fischbein, her husband, or one of them, may be compelled by the decree of this court to pay unto complainant by a short day to be appointed by this court, said sum of $2,000 paid by complainant unto said defendants as aforesaid, together with interest thereon and the costs of this suit or whatever sum this court may find due from said defendants to complainant, which sum or sums may be declared by this court to be a lien on said lands; and in the event that said defendants Leonora Fischbein and Louis J. Fischbein fail to pay to complainant said sum or sums within the time limited by this court, that said lands may be sold under the direction of this court for the satisfaction of such lien so impressed on said lands and premises.
"3. That said Leonora Fischbein and Louis J. Fischbein, her husband, or one of them, may be compelled by a decree of this court to pay unto complainant by a short day to be appointed by this court, said sum of $115 paid by complainant for said survey and examination of title, together with interest thereon."
I have examined the briefs of complainants in both the Bailey
and Grunt Cases. The brief in the Bailey Case are entirely silent on the question of the existence of the vendee's lien. In the Grunt Case, the case was submitted without oral argument. Complainant's brief is silent on the subject and defendant's brief contains only the following:
"This case is in reality nothing but an action for the recovery of a deposit. Its solution depends solely upon legal, *Page 640 
not equitable principles. The action should have been at law, but even if properly in equity, because of the right of appellants to follow the deposit into the land, it must be determined by legal and not equitable principles, and Meyer v. Madreperla,68 N.J. Law 258, applies."
This manifestly is no discussion of equity jurisdiction to enforce a vendee's lien.
The court of errors and appeals, in the Bailey Case used the following language:
"The case is clearly distinguished from such cases asGoldstein v. Ehrlick, supra."
In Goldstein v. Ehrlick, Vice-Chancellor Backes allowed an equitable lien, saying:
"The complainant is entitled to rescind and a return of his money. He is not obliged to take the title with the encroachments. They are slight, but, nevertheless, substantial, and specific performance would not be decreed against him.Doutney v. Lambie, 78 N.J. Eq. 277; Herring v. Esposito,94 N.J. Eq. 348. The padlock proceedings are a cloud upon the title sufficient to prevent the enforcement of the contract. Dobbs v.Norcross, 24 N.J. Eq. 327; Van Riper v. Wickersham, 77 N.J. Eq. 232; Kohlrepp v. Ram, 79 N.J. Eq. 386. A valid reason for refusing specific performance, such as a defect in the title, warrants a rescission of the contract.
"The complainant is entitled to a decree for $1,030, and a lien upon the premises for $1,000. The act of 1915 (P.L. p. 316; 1Cum. Supp. Comp. Stat. p. 472), gives a right of recovery for search fees in actions for breach of contract against the vendor upon failure of title, but not a specific lien therefor on the lands. Ordinarily, the fees would have to be recovered at law, but equity will award them as incidental to other equitable relief."
It appears from the last quotation from the Bailey Case that the existence of the vendee's lien has been recognized in both the court of chancery and the court of errors and appeals as late as February and March, 1929. The Grunt Case says expressly, "the case in its legal aspect is identical with Bailey v. B.Holding Co., supra, No. 41, of the present October term, *Page 641 
1928," and in this connection it should be borne in mind that theBailey Case did not pray for a lien and the court in its opinion distinguished it from the Goldstein Case, treating theBailey Case as a suit for the recovery of deposit money.
With such recognition of the vendee's lien by the court of errors and appeals in the cases relied on by defendants, it is difficult to see how those decisions have wiped out the vendee's right to such lien where he properly pleads his cause.
Without the sentence in the Bailey opinion, "the case is clearly distinguished from such cases as Goldstein v. Ehrlick,supra," that decision might erroneously be taken as authority for abolishing the vendee's right to specific performance and as wiping out the right to an accounting in equity. I am sure that such a course was not contemplated by the court of errors and appeals.
It cannot be contended that either the Bailey or GruntCases, which the court treated as embodying a common legal question, can be taken to annihilate a head of equity jurisdiction which has existed unquestioned in England since long prior to the American Revolution and the establishment of our court of chancery, as well as in every American jurisdiction, including New Jersey.
Since preparing this opinion my attention has been called to the case of Clark v. Badgley, 104 N.J. Eq. 260. If the theory upon which this case was decided be correct, then it may be urged that the underlying doctrine of equitable conversion upon which rests the right of a court of equity to decree specific performance and grant other equitable relief, has been set aside. The court of errors and appeals in The Delafield ConstructionCo. v. Sayre, 60 N.J. Law 449, recognized as a head of equity jurisdiction the enforcement of a lien or the payment out of a particular fund, and for that reason held that, although the statute was silent upon the subject, a suit to enforce a municipal lien could properly be brought only in a court of chancery.
The Clark Case cites only Bailey v. B. Holding Co.
However, in spite of what I have said above, I am constrained to advise a decree dismissing the bill. *Page 642