## J. H. GALBRAITH V. A. C. REEVES.

### No. 3224.

1. **Rescission of Contract for Exchange of Lands.**—Where one of the parties to an unexecuted contract for the exchange of lands failed to execute the agreement on his part and the other party refused to complete the contract or to accept a substitute for the failure and offered and demanded a cancellation, it becomes the duty of the court to administer that relief. The court can not add to the contract and enforce it as altered.

2. **Decree of Rescission.**—See decree approved cancelling a contract for exchange of land, on account of the failure of the plaintiff to deliver possession of the land he had contracted to convey, or to surrender the lease notes for it, for the term it had been leased, or to pay the money on such notes. The defendant had made a payment. This was secured in the decree by lien upon the land of the plaintiff upon which the payment had been made.

ERROR from Navarro. Tried below before Hon. RUFUS HARDY.

The opinion states the case.

*H. L. Stone*, for plaintiff in error.—1. A court of equity will not rescind a contract unless fraud appear or there has been a plain and palpable mistake affecting the very substance of the subject matter of the contract. Putnam v. Bromwell, 73 Texas, 465; Watson v. Baker, 71 Texas, 739; 5 Wait's Act. and Def., art. 2, sec. 1, pp. 510, 511; Bish. on Con., enlarged ed., sec. 828, p. 320.

2. A court of equity will not interpose to rescind a contract where an adequate remedy at law exists. White v. Thayer, 121 Mass., 227; Peay v. Wright, 22 Ark., 198.

3. The inability of a party to pay is not sufficient ground to set aside a sale. Lupin v. Marie, 6 Wend., 77.

4. When defendant refused to deed plaintiff the Dallas property, or his equity therein, then the agreed value thereof, to-wit, $3000, less $1080 incumbrance, leaving $1920, became a money demand in plaintiff's favor and a lien on the land sold defendant, being purchase money, and plaintiff was entitled to recover that amount less the $280 lease money he had agreed to pay to defendant.

*McKie & Autrey*, for defendant in error.—Our right to the relief granted appears so plain that we submit our authorities on the point without comment:

"A suit for rescission of a contract being an appeal to the chancery jurisdiction of the court, is not to be determined by the harsh and strict rules of law, but upon broad and liberal principles of equity." Hart v. Bullion, 48 Texas, 287.

"A purchaser is not bound to receive from his vendor a title charged with a prior right of possession in another party when a fee simple title was contemplated in the bargain." Roberts v. Smith, 64 Texas, 94.

"A court of equity will, upon rescission of contract for sale of land, make special provision for the protection of the party relieved against loss occasioned by the insolvency of the other party." McCarty v. Moorer, 50 Texas, 287.

"Nonpayment of purchase price as agreed is good cause for rescission of contract of land sale." Mulligan v. Ewing, 64 Texas, 258.

"The time fixed for the performance of a contract is in law deemed the essence of the contract, and if the seller is not ready and able to perform his part of the agreement on that day, the purchaser may elect to consider the contract at an end." Bank v. Hagner, 1 Pet. (U. S.), 455.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by appellant to recover $2000, which he charged was the balance of the purchase money of a tract of land lying in Navarro County sold and conveyed by him to the defendant, and praying for a foreclosure of his vendor's lien. The defendant answered. The judge filed the following conclusions of fact and law:

Conclusions of Fact: "1. Plaintiff on or about December 1, 1888, contracted or agreed verbally with defendant to sell him the land described in plaintiff's petition. The real consideration of the sale, as agreed on by them, was not stated in the deed, but the same was the assumption of a lien on the land in favor of the Texas Trust Company for the sum of $2750 and the interest thereon, the payment of $1400 in cash, and the conveyance to be made to plaintiff by defendant of a house and lot in the city of Dallas, at an agreed valuation of $3000, on which house and lot there was a lien for the sum of about $1080, that plaintiff was to assume. When this contract was made, the land contracted to be sold to defendant was leased until the next April to High & Tadlock, and the entire agreement of the parties contemplated and was that plaintiff would procure the cancellation of the lease if he could; if not, that he would pay to defendant the lease money, which was represented to be $280, or transfer the lease notes to defendant.

"2. After the agreement reached as above the parties separated, with an agreement to meet in Dallas on the following Wednesday, when

the necessary papers were to be executed and the contract carried into execution. The parties met according to agreement, each having his deed written, ready to be signed and acknowledged; but owing to the lateness of the hour when plaintiff arrived and the limited time he had to stay, they were unable to get an officer to take their acknowledgments. It was then agreed that plaintiff should return home, execute his deed, and send it to defendant, and have his wife join in the same, and that defendant should execute his deed to plaintiff, and on receipt of plaintiff's deed forward the same to plaintiff. On this day defendant paid to plaintiff the $1400 consideration in his deed, by procuring for him and delivering to him the receipt of Blankenship & Blake for that amount, plaintiff owing the firm of Blankenship & Blake that amount. It was still understood that the contract was the same as at first with reference to the cancellation of plaintiff's lease or the payment by him to defendant or transfer of the lease money or notes.

"3. The plaintiff, in pursuance of the last agreement, on returning home executed his deed, in which his wife joined, and forwarded the same by mail to defendant, requesting him (defendant) to forward his to him (plaintiff), and in the same letter informed him that he could not carry out the part of the contract in reference to the lease, as the party who held the lease notes had cashed them at the bank, and requested defendant to forward his deed, to which defendant replied, declining to send the deed to the Dallas property until he was put in possession of the land deeded him by plaintiff, or until plaintiff should pay him $280, the value of the lease. To this plaintiff replied, that he had no money, but that he would execute and deliver to defendant his note for the $280, with vendor's lien on the Dallas property, if defendant would deed it to him. This proposition defendant declined. Defendant proposed to surrender to plaintiff his deed if plaintiff would pay him back the $1400, or give him a note for the $1400 paid, with a lien on the land conveyed by the deed. This proposition plaintiff declined. Defendant also testified, and was not contradicted, that he had offered to take $1200 from plaintiff and deliver up his deed from plaintiff and wife, and this was declined by plaintiff.

"4. When the original contract of sale was made, no particular time was specified when plaintiff was to deliver the possession of the land to defendant, but plaintiff was to procure the cancellation of the lease, if he could; if not, that he would deliver to defendant the lease notes; but the terms of the trade were general, just being that plaintiff would do certain things, the things he agreed to do, and defendant likewise would do certain things he agreed to do. Defendant retained the deed executed and sent him by plaintiff, and no agreement having been reached between them, the plaintiff on the 9th day of September brought this suit.

"Further, that J. H. Galbraith, plaintiff, was at that date of trade, and has been ever since, insolvent."

Conclusions of Law: "Under the foregoing facts, the court finds that when plaintiff informed defendant of his inability to comply with that part of the contract in reference to the lease, the defendant was no longer bound to carry out his part of said contract, and having tendered plaintiff's deed into court, with the prayer that said contract be cancelled entirely, the court finds that such a course will be an equitable and just conclusion of the controversy between the parties, and it so finds. The court further finds that defendant is entitled to a lien on the land described in plaintiff's petition for the $1400 paid, with interest from the date of payment. The court finds that the contract was in its entirety a contract whereby plaintiff in this case was obligated, (1) to execute and deliver to defendant a deed to the land in Navarro County; (2) to give defendant possession of it or transfer defendant the notes, for which same was leased, or pay defendant the sum of $280 (which was understood to be the amount of said lease note); (3) to assume the debt against defendant's Dallas property.

And defendant herein obligated himself, (1) to pay $1400 in cash; (2) to make deed to plaintiff to the Dallas property; (3) to assume the indebtedness against the Navarro County land of some $2750.

"And that plaintiff having failed entirely in the performance of the second part of his agreement, by refusing to comply therewith, before any default on the part of defendant, defendant is entitled to have the entire contract rescinded and cancelled, and to be by the court restored, as near as may be, to his status before the trade; and hence the judgment cancelling the trade and establishing defendant's claim."

A decree was entered cancelling the deed from plaintiff to defendant and awarding to the defendant the purchase money by him paid, with interest, and establishing it as a lien upon the Navarro County land.

The contract was never executed. The agreement of Reeves was to convey the Dallas property, in consideration of his receiving either the immediate possession of the Navarro land or the lease notes, or the sum of money that they represented, among other considerations.

The plaintiff had no right to demand a specific performance by Reeves of his part of the contract without at the same time discharging his own. He could not demand of Reeves that he should accept something not consented to by him as a substitute and proceed to execute the contract in other respects. And no more could the court add to the contract a circumstance not within the agreement of the parties and compel its performance as changed by the court. When one of the parties failed to execute the agreement upon his part and the other one refused to complete it or to accept a substitute, and offered and demanded a cancellation, it became the duty of the court to administer that relief. It was done by cancelling the deed that the de-

fendant had received, and by requiring the plaintiff to refund the money that he had received. When the deed that the defendant held as his security was surrendered it was correct to give him security upon the land. The security given the defendant was properly upon the Navarro land owned by the plaintiff, and not upon the Dallas land owned by himself.

The judgment is affirmed.

*Affirmed.*

Delivered November 27, 1891.