### HOUGH et al. v. FINK et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 15, 1911.)

1. PLEADING (§ 228*)—EXCEPTIONS—GENERAL DEMURRERS.

An exception, alleging that defendants specially except to all that part of plaintiff's petition which undertakes to set up a lien, for the reason that the facts alleged are not sufficient to establish the lien, is only a general demurrer, in that it fails to point out wherein the pleading is insufficient.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. § 228.*]

2. VENDOR AND PURCHASER (§ 337*)—DEFECTIVE TITLE—RECOVERY OF DEPOSIT—LIEN.

Where the purchaser of several tracts of land, under a contract calling for a stipulated payment to be applied on the purchase money, refused to take some of the land because of a defective title, the court may, in an action to recover back the proportionate amount of the deposit, decree a lien in favor of the purchaser on the land not conveyed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 985–990; Dec. Dig. § 337.*]

3. VENDOR AND PURCHASER (§ 334*)—CONTRACTS—CONSTRUCTION.

A vendor agrees to sell certain described land, the purchasers to pay $5,000 for an option until April 1st, such sum to apply on a cash payment; it being understood that if the purchasers take and pay for all the land before April the vendor shall refund $1 per acre on all the land already sold, and shall deduct for land unsold $1 per acre, and in case good title cannot be conveyed then the sum already paid to be refunded. The contract was not treated as a mere option, and the purchasers admitted that they did not intend to take all of the land, though they did take and pay for part of it. Held that, not having taken the entire land, or given notice that they would do so, the purchasers were not entitled to have the refund of $1 per acre, and, having performed the contract only in part, could not recover back the $5,000, which must be considered as a penalty deposited with the vendor to guarantee any

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

damages he might suffer by reason of the purchasers' failure to carry out their contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 334.*]

4. APPEAL AND ERROR (§ 719*)—ASSIGNMENT OF ERROR—ERRORS OF RECORD.

Error in peremptorily instructing the jury to return a verdict for defendant is an error of law apparent on the record, which may be taken advantage of without an assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2975; Dec. Dig. § 719.*]

5. APPEAL AND ERROR (§ 729*)—RECORD—ASSIGNMENTS OF ERROR.

An assignment of error that the court erred in taking the case from the jury after the evidence was all in, and instructing for defendant, is sufficient to warrant review of all errors committed by the court in giving the peremptory instruction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2998, 3016; Dec. Dig. § 729.*]

Appeal from District Court, Castro County; L. S. Kinder, Judge.

Action by Frank Hough and another against Henry J. Fink and another. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

Barcus & North, for appellants. A. S. Rollins, for appellees.

COBBS, J. This suit was brought by appellants against appellees to recover the sum of $5,000, paid by appellants to appellees under and by virtue of a certain contract, dated December 19, 1908, which said contract provided that appellees were selling, and would deliver, to appellants certain lands in Castro county, Tex., and in Swisher county, Tex., consisting of 8,800 acres, and providing that said land was sold at $15 per acre bonus for the school land, and $16 per acre for the patented land, to be paid for, $6.50 per acre cash, and the assumption of certain indebtedness then against said land, and the balance to be in three equal payments.

Appellants alleged that they paid the sum of $5,000 under said contract at the time it was executed, and that they took and paid for 3,840 acres of said land at the rate of $16 per acre for the patented land, and the sum of $15 per acre bonus for the school land, and that the appellees failed and refused to deliver abstracts and deeds, as provided under the terms of said contract, to the remainder of said land, to wit, 4,960 acres of said land, and that by reason thereof appellants were entitled to a refund of the entire said $5,000. Appellants further alleged that, if not entitled to recover the entire amount of $5,000, under the terms of said contract, they were entitled to recover the pro rata share of the part on the 3,840 that they accepted, which they alleged was $2,188.80.

Appellants prayed for a judgment for the said $5,000, with interest, and, in case the court should hold them not entitled to recover said $5,000, then they prayed for a judgment for a pro rata part of said $5,000 on the land so taken by appellants, to wit, the sum of $2,188.80 with interest, and that, in the event the court should hold them not entitled to recover the said $2,188.80, then they prayed for a judgment for the pro rata part on the land which appellees failed to furnish abstracts and deeds to, to wit, $2,827, with interest, and for a lien to be fixed on said land to secure the payment of said judgment, and for a foreclosure of said lien.

The contract between the parties for the sale of the land is as follows: "19 December /08. This contract entered into this day by and between Henry J. Fink of Bellville, Illinois, party of the first part, and M. J. Ramaekers and Frank Hough of Lindsay, Nebraska, parties of the second part, witnesseth: Party of the first part hereby agrees to sell and convey unto the said parties of the second part the following described land, to wit: Surveys No. 143, 136, 144, 138, 98, 174, 137, 104, 146, 145, 103, 105, N. ½ 176, S. ½ 177, N. ½ 178, S. E. ¼ 178, all in block M6, Castro and Swisher counties, Texas, containing 8,800 acres of land, more or less, according to survey. The consideration for the transfer of said land is $15.00 bonus per acre on all school land and $16.00 per acre on patented land, to be paid as follows: $6.50 per acre cash, to be paid on or before April 1st, 1909, and balance by assuming $20,186.00 now against the land, due one-half, Oct. 18th, 1909, and one-half Oct. 18th, 1910, bearing 8% interest from October 18, 1908. Said notes to be discounted 2% annually, and interest paid by first party until Dec. 15th/08. The balance of the consideration to be divided into three equal annual payments bearing 6% interest from December 15/08 and due one, two and three years from December 15/08. Said land to be deeded in section tracts, except those now deeded in quarter sections. Second party hereby pay the sum of $5,000.00 for an option on above land until April 1st, 1909 and same sum to apply on cash payment for the land. It is hereby understood and agreed that in the event the parties of the second part take and pay for all land, on or before April 1st /09, that parties of second part shall have refunded $1.00 per acre on all land already sold and shall pay for land unsold on a basis of $1.00 per acre less than price above stated to be taken from cash payment. Section 136 is not to be deeded until all land is sold. Party of first part agrees to furnish abstract showing good title to each of above sections, and warrant deed to all land, subject to the amount due the State on School land. In case good title cannot be conveyed then the $5,000.00 already paid to be refunded to second parties. Witness our hands this 19th day of December, 1908. Henry J. Fink, by C. R. McAfee, Parties of the First Part.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Frank Hough, M. J. Ramaekers, Parties of Second Part. Witness: R. W. Hessey."

Under the view we take, it will require a reversal of this cause, and it is proper to first dispose of the ruling of the court on the pleadings.

[1] The first assignment of error is, "The court erred in sustaining special exception No. (a) of the defendants to plaintiffs' petition." The petition is too lengthy to copy, and, since it will meet all practical purposes, we copy the portions to which the demurrer is directed, as follows:

"And plaintiffs allege that the defendants never executed or tendered to plaintiffs a warranty deed for any of the land, except that which they took and paid for; that no deed was ever executed or tendered to them to sections Nos. 136, 98, 174, 104, 146, 145, 105, N. ½ 176, N. W. ¼ 178, containing 4,960 acres of land; that, by reason of the defendants failing and refusing to furnish an abstract, showing title to said land, and furnishing deed to said land by April 1, 1909, as provided in said contract, that the plaintiffs are entitled to recover of and from the defendants the pro rata part of said $5,000 paid to the defendants, to wit, 57 cents per acre on the 4,960 acres, to wit, $2,827.20, with interest thereon from December 19, 1908, the time said money was paid to defendants; and plaintiffs allege that by reason of said money being paid as part of the purchase price on said land that they are entitled to a lien on all of sections Nos. 136, 98, 174, 104, 146, 145, 105, N. ½ 176, and N. W. ¼ 178, in Castro and Swisher counties, Tex., or the payment of said money. Wherefore plaintiffs pray that the defendants be cited in terms of law to appear and answer herein, and that on final hearing hereof they have judgment against the defendants, and each of them, for the said sum of $5,000, with interest thereon from December 19, 1908, until paid, and, in case the court should hold plaintiffs not entitled to recover said $5,000, then plaintiffs pray for a judgment against said defendants, and each of them, for a pro rata part of said $5,000 on the land taken by plaintiffs, to wit, the sum of $2,188.80, with 6 per cent. interest thereon from December 19, 1908, and, in the event the court should hold plaintiffs not entitled to recover said sum of $2,188.80, then plaintiffs pray for a judgment for that part of said land to which defendants failed to furnish abstracts and deeds, to wit, the sum of $2,827.20, with interest thereon from December 19, 1908; for a lien to be fixed on all of said sections Nos. 136, 98, 174, 104, 146, 145, 105, N. ½ 176, and N. W. ¼ 178, in Castro and Swisher counties, Texas, to secure the payment of said $5,000; for a foreclosure of said lien on said land; for costs of suit; and for such other and further relief, special and general, in law and in equity, that they may show themselves entitled to," etc.

The demurrer is as follows: "These defendants specially except to all that part of plaintiffs' petition which undertakes to set up a lien against any land, for the reason that the facts alleged and set out in said petition are not sufficient to establish a lien against any property." The proposition under said assignment properly raises the issue. The exception is in its nature no more than a general demurrer, which does not point out wherein the pleading is insufficient.

[2] The portions of plaintiffs' petition challenged must be read in connection with the entire pleading, which sufficiently sets out a cause of action. Under the view we take of this case, the pleadings are sufficient to raise the issues pertaining to appellants' right of recovery, and, as the case will be tried again, we are disposed to withhold, as far as possible, any comment upon the testimony and action of the parties. If, according to appellants' theory, the appellees withhold any portion of the $5,000 in excess of the purchase price of the land actually conveyed, it would be entirely proper for the court to decree a lien in his favor upon the balance of the land, not conveyed, embraced in the contract. Galbraith v. Reeves, 82 Tex. 359, 18 S. W. 696; Elterman v. Hyman, 192 N. Y. 119, 84 N. E. 940, 127 Am. St. Rep. 862.

It is not necessary to elaborate this point. In the case of Elterman v. Hyman, supra, will be found an able and elaborate discussion of equities that grow out of transactions of this kind. It is said: "In case last cited, the lien is spoken of as the invention of equity for the purpose of doing justice; but this is the foundation of all equitable liens. They did not exist at common law, but were created by courts of equity because required by natural equity. They do not depend upon express contract, but on the principle that one person has the legal title to something that another person has a natural, hence, within well-guarded limits, a better, right to or to some part thereof." Hence the court erred in sustaining the demurrer.

[3] The parties on the trial entered into the following agreement: "It is agreed that the $5,000 specified in the contract sued on was paid by the plaintiffs to the defendants under the terms of the contract. It is agreed: That the defendants delivered to the plaintiffs abstract to each portion of land described in said contract on the 20th day of March, 1909, and that said abstracts showed that there was a series of four notes against each section of said land, aggregating in the total twice the amount which plaintiffs were to assume against the land under the contract. That said notes were dated October 18, 1906, and due October 18, 1907, 1908, 1909, and 1910, and there was no release executed or recorded to the first two of said notes, and the last two of

said notes were the ones that plaintiffs were to assume under the terms of the contract. That there was attached to each of said abstracts the two first notes of each series, marked 'Paid,' and a receipt from D. A. Park, cashier of the First National Bank of Canyon, Tex., the bank at which said notes were made payable, to the effect that the interest on the two notes of each of the above series, due October 18, 1909 and 1910, was paid up to the 18th day of October, 1908. It is further agreed that the plaintiffs accepted the title to six sections of said land, containing 3,840 acres, and paid therefor the cash payment, and executed the notes for the deferred payments, and assumed the notes against said land, as provided for under the terms of the contract. It is further agreed that no part of the $5,000 paid in cash under the terms of the contract was applied to the payment of the six sections of land conveyed to the plaintiffs and no part of the said $5,000 has been refunded to the plaintiffs. It is further agreed that the above and foregoing statements are by all parties to be admitted in evidence. It is further agreed that the plaintiffs never, at any time, tendered to the defendants the cash payment or offered to execute the notes on the remaining 7¾ sections, and never at any time demanded that the defendants execute to them warranty deed to said land."

There was evidence introduced going to show that the contract was dictated by Mr. McAfee, and it was understood that appellants were to have credit on the $5,000 pro rata to the payments that were made right along; that they paid for six sections $1 an acre more than the $5,000 they expected to get credit for, $1 an acre more than they would have paid, had they taken all the land. When the money was paid, they understood they were to get deeds for each section as they sold it. Took six sections, and expected to go on according to the contract on the other land. Mr. McAfee did not tender deeds to the other 7¾ sections.

On the 31st day of March, or 1st of April, Mr. Barcus, attorney for appellants, called on Mr. McAfee, and told him he was ready to close up for four sections of the land. He passed favorably upon the title to the four sections, paid the cash price, and the notes were signed up for deferred payments. He "told Mr. McAfee that Mr. Ramaekers and Mr. Hough expected him to refund the pro rata part of the $5,000 on these other sections that they had taken, and he replied, 'I don't think the contract provides for that,' and then he says, 'If the gentlemen want it, I can give an extension of time.' I told him that Mr. Schacher or myself, neither one, was authorized to agree to any extension or accept any extension, but that if he wanted to make them a proposition he could send it to them, and he drew up this contract that was read here in evidence— I mean this letter—granting them the ex-

tension." He further stated that he did not know whether it was mailed or given Mr. Schacher to be delivered to them. He said nothing about extension for appellants, and neither he nor Mr. Schacher asked for an extension.

The appellees contradict the testimony in many material matters, saying when the four sections were accepted on April 1st there was no demand whatever made at that time that any part of the option money be applied on the cash payment of the four sections. The first intimation that he had was in the afternoon of April 1, 1909, when Mr. Barcus came to him in the office, and stated that his clients would not go on through with the deal, and that that they thought they were entitled to a pro rata part of the $5,000 on the six sections; and "when he did that I again tendered him the deeds, and made the statement that I tendered to the plaintiffs all the deeds of the 7¾ sections which I had left." He further testified that the delivery of the four deeds was not made until "after this agreement for the extension, and his statement to me that the parties would be able and willing to close up on the balance; then I delivered him the deeds to the four sections."

But it is undisputed, and comes from the mouth of appellants themselves, that they did not, at the time the contract was made, intend to take all the land. Mr. Frank Hough himself stated: "I was present when that two sections proposition was closed up— myself and Mr. Van Ackersen, from Lindsay, Nebraska. * * * At the time that we closed up the deal on the two sections, we paid the $6.50 on that land. At that time, I spoke to Mr. McAfee about allowing us the pro rata part of the $5,000, and he said that the contract did not provide for it." Again he says: "At the time that Mr. Schacher came down here, April 1st, with authority to close up for the four sections of land, we didn't think at that time that we would take the remaining part of it; and therefore we just authorized Mr. Schacher to close up for the four sections, and sent the cash payment down with him to make that payment." Again he says: "I told him [McAfee] if there was any way that I could sell some of that land that I would be glad to sell it, but that I could not personally take the land myself."

The other appellant, Mr. M. J. Ramaekers, testified: "At the time that I executed this instrument, on the 30th day of March, 1909, I did not intend to take the other 7¾ sections of land." This refers to his power of attorney of that date, given by him, constituting P. J. Schacher his agent and attorney in fact, under authority of which, in connection with Mr. Barcus, the deal for the four sections was closed. When he reached that conclusion is unimportant, since it was reached before the time in which, under the contract, fixed as April 1st, they should elect to take all the land. There is nothing to

show that appellees were cognizant of their private intention, and upon the state of this record the appellants breached the contract in part at least, unless permitted to do so by appellees.

The contract was not treated as one of mere option, granting the right to buy. It is otherwise a contract, complete in all its terms, for the sale and purchase of lands. It does say: "Second party hereby pay the sum of $5,000.00 for an option on above land, until April 1st, 1909, and same sum to apply on cash payment for the land." It gives the names of the parties, gives a complete description of the land, and provides fully all the details and terms of sale. It provides: In case "parties of the second part take and pay for all land, on or before April 1st/09, that parties of second part shall have refunded $1.00 per acre on all land already sold and shall pay for land unsold on a basis of $1.00 per acre less than price above stated to be taken from cash payment," as an inducement to get the purchasers to take all the land on or before April 1st. To secure the benefit of the credit, we do not mean that they should have in fact closed the deal and secured deeds to the land, but should at least have notified appellees timely of the intention, and the contract plainly provides how the same was to be carried out. They did not close the trade for all the land within the special time, or give notice they would do so, and have thereby lost all right to claim any such credit.

The record shows that the parties have construed the contract differently. The record also shows the parties did close the deal for six sections of land, and, whatever might have been the view of appellees, that appellants paid for an option to purchase the land, the fact still remains appellees allowed and permitted the contract to be so far performed as to act under its terms to the extent of conveying nearly one-half of all the land, thereby to that extent at least of merging the option so claimed into a partly executed contract, and cannot, after so treating with each other, now say it was nothing more than an option contract.

While it is true the contract may not in terms bind appellants to purchase any land, if they did not indicate their intention to do so on or before April 1st (the day the contract provided when they should speak), they yet did speak to the extent of purchasing part of the land, and for the purposes of this suit they should be treated as though they had agreed to take all the land, unless in some way they were relieved from their obligation by appellees, for they cannot take benefits under the contract in part, and not be correspondingly bound by its terms.

This contract does not provide what shall become of the cash sum of $5,000 paid, in case the party of the second part does not purchase all the land, in whole or in part, on or before April 1st, or in case of any default by them to carry out the contract, in whole or in part; but it does provide, "in case good title cannot be conveyed then the $5,000.00 already paid to be refunded to second parties." If appellants had not complied with the contract at all, leaving out all question of option, and treating the money as a deposit, can it be said under its terms they would have a right to recover the entire amount of $5,000, if appellees had thereby been damaged? Certainly not. If they have partially complied with the contract, because appellees permitted them to do so, being misled as to their true intention, are they thereby in a better position than they would have been in the first instance? In either case, the $5,000 can now only be treated as a deposit, placed as a penalty with the seller, to guarantee the damages, if any, suffered, which amount in all cases depends upon the proof, under the facts of the case and the acts and conduct of parties. Whatever might have been the effect of the contract originally, whether option to buy, as contended, or a deposit as a penalty, we feel constrained, on account of the action of the parties themselves, to eliminate all such questions, and hold, as stated, the money deposited was in the nature of a penalty.

It may be, on another trial, both parties will desire to reform the pleadings, and we refrain from commenting upon the same.

[4, 5] Upon this state of the record, the court instructed a verdict in favor of defendants, and appellants submit the following assignment of error: "Second Assignment of Error: The court erred in taking the case away from the jury after the evidence was all in, and in instructing the jury to return a verdict for the defendants." It is fundamental error to improperly instruct a peremptory verdict, which requires a review of the record on appeal, without any specific assignments of error. Searcy v. Grant, 90 Tex. 97, 37 S. W. 320; Olivarri v. W. U. Telegraph Co., 116 S. W. 392; Southern Pine Lumber Co. v. Arnold, 139 S. W. 917. However, we think the second assignment is of itself sufficient to raise all the errors committed by the court in giving the peremptory instruction, without regard to the points presented by the propositions thereunder. The issues of fact should have been submitted to the jury upon proper instructions, and it was error to direct a peremptory verdict. This cause, for the reasons given, will be reversed for another trial.

Reversed and remanded.