## LEVINE v. TURNER.

No. 4989.

Court of Civil Appeals of Texas.
El Paso.

Jan. 6, 1954.

Rehearing Denied Jan. 27, 1954.

Corenbleth, Thuss & Jaffe, Harold B. Berman, Dallas, for appellant.

Frank Cusack, Dallas, for appellee.

McGILL, Justice.

This was a suit by the purchaser under an executory written contract of sale of real estate, to recover from the seller the earnest money deposited by the purchaser. Trial was to the court and judgment rendered in favor of the purchaser against the seller for $500, the amount deposited as earnest money, with interest. Appellee was plaintiff and appellant defendant in the trial court.

The pertinent provisions of the contract which is the basis for the suit are: The seller agreed to sell and convey by general warranty deed and the purchaser agreed to buy and pay for Lot 19, Block 2/4547 of L. O. Daniel, Jr., Addition No. 1 to the City of Dallas, Texas. The purchase price was $15,000. Two thousand dollars cash was deposited with the seller, five hundred dollars thereof as earnest money. It was further provided:

"Purchaser to arrange for a 1st lien in the amount of $9400.00 and execute

a 2nd lien to Seller for $3600.00 payable $52.60 per month, including interest @ 6%, on or before note.

"The payment of said note or notes to be secured by vendor's lien and Deed of Trust with power of sale and the usual covenants as to taxes, insurance and default.

"Seller agrees to furnish title policy through Texas Abstract and Title Company to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein, * * *."

That if the title company raised objections to the title to the property the seller should have thirty days time within which to meet such objections and if the seller was unable to meet the objections the deposit should be returned to purchaser, but that if the title was approved and either party failed or refused to consummate the contract the other might enforce specific performance thereof, and in the event the purchaser was the defaulting party the seller should have the right to retain the cash deposit as liquidated damages for the breach of the contract.

The court filed elaborate "Conclusions" of fact and Conclusions of Law, and in response to defendant's request filed additional "Conclusions" of fact and Conclusions of Law. We shall discuss the pertinent findings and conclusions. The court found that the title tendered by the defendant to plaintiff through the Texas Abstract and Title Company in its letter dated April 3, 1952, was an offer to convey the property subject to the liens and further subject to the restrictive covenants appearing of record in Vol. 2202, p. 183 of the Deed Records of Dallas County, Texas, and that any title policy issued by the Texas Abstract and Title Company would be subject to such restrictions. He further found that the plaintiff by a letter from his attorney dated April 7, 1952, called upon the defendant to cure and remove such restrictive covenants within thirty days or to return plaintiff's earnest money deposit of $500; also that the contract provided that the $500

earnest money deposit should be returned if the title objections were not cured within the thirty days and that the defendant did not cure the title defects within the thirty days but sold the property to another at or about the expiration of such thirty day period. The court concluded that as a matter of law the restrictions and restrictive covenants of record in Volume 2202, p. 183 of the Deed Records of Dallas County were encumbrances on the fee simple title to the property within the meaning of the contract and that such encumbrances were not excepted from the contract, and that plaintiff was entitled to recover the $500 earnest money deposit.

Appellant has presented and briefed four points on which he relies for a reversal.

■ The first point is that the court erred in holding that the restrictions were encumbrances to the title of the property under the terms of the contract.

The restrictions referred to were contained in a restriction agreement executed by L. O. Daniel, Jr., the owner of the L. O. Daniel, Jr. Addition No. 1 to the City of Dallas, a subdivision of such city, on April 27, 1940, and such agreement was recorded in Vol. 2202, p. 183 of the Deed Records of Dallas County when the contract referred to was executed on March 10, 1952. Among other restrictions the restriction agreement limited the use of lots to residential lots and the kind and character of buildings that might be erected or remain thereon to one detached single family dwelling; the location of the buildings thereon to certain distances from the property lines; the kind of materials to be used in such buildings and the size thereof. Easements were reserved for installation and maintenance of utility lines.

As a general rule such restrictions as to the use to which premises may be put constitute encumbrances under a contract by which the vendor obligates himself to make a good or marketable title free and clear of encumbrances. 55 Am.Jur. p. 702, § 246; Annotation 57 A.L.R. p. 1414; Lohmeyer v. Bower, 170 Kan. 442, 227 P.2d 102.

That a restriction upon the use of land renders the title unmarketable was held by the San Antonio Court of Civil Appeals in Newman v. Hasslocher, Tex.Civ.App., 242 S.W.2d 822 (no writ history). The Supreme Court has defined the word "Incumbrances" to mean

"An estate, interest, or right in lands, diminishing their value to the general owner; a paramount right in, or weight upon, land which may lessen its value." Thomson v. Locke, 66 Tex. 383, 1 S.W. 112, 114; Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, loc. cit. 565.

This must mean that the value is lessened for general purposes and not that it necessarily be lessened for residential purposes only. See authorities supra.

The San Antonio Court of Civil Appeals in Newman v. Hasslocher, supra, went so far as to say that

"It is no defense to show by the opinion of experts that the value of the property is not diminished by the restrictions." [242 S.W.2d 824.]

In the case at bar there was evidence that plaintiff wanted to build a garage apartment on the rear of the property, which he could not do because of the restrictions. Certainly the restrictions rendered the property less valuable for this purpose. Our conclusion is that as a matter of law the restrictions were encumbrances on the property within the meaning of the contract, and were not excepted by it.

The second point is to effect that appellee had breached the contract by failing to arrange the financing of the first lien note before the title company wrote him the letter of April 3rd advising that their attorneys had approved title to the property and that they were ready to close the deal, and that the court erred in holding this was no defense. Of course the letter of April 3rd was prior to the letter of April 7th in which appellee's attorney advised appellant that he had that day checked with the title company and ad-

vised appellee of the restrictions. There is no finding that appellee had repudiated the contract prior to the letter of April 3rd. The only finding bearing on such alleged repudiation is No. 5 of the additional findings, to the effect that prior to the third day of April, 1952, the plaintiff's wife called the defendant's wife and informed her that under the financing that had been arranged she would have to continue working for another ten years, which she did not want to do, and that she would like to have the $500 earnest money returned. This finding does not reveal a repudiation as a matter of law, especially since appellee's wife testified that had the restrictions been removed, rather than lose the $500 deposit she would have gone through with the deal. The facts do not bring this case within the well settled rule on which appellant relies.

The third point is that the court erred in refusing to find as a fact that appellee had breached and repudiated the contract and it would have been useless for appellant to attempt further performance thereafter, and in concluding that this was no defense. It is appellant's theory that the real reason that appellee refused to go through with the deal was because he could not finance the $9400 first lien note to his satisfaction. He relies on the testimony of appellee's wife to compel such finding. This was to effect that after she learned of the restriction she went to the title company and they told her she would have three days to get the money; that she then went to Mr. Cusack and hired him to get the $500 deposit back; that she wanted either the $500 or the property; that she wanted to go through with the deal if she could get the loan contracted for; that her refusal to go through with the contract was because the loan was too high; that she did not feel like paying the payments on the first lien note; that she told Mr. Cusack if he could get the restrictions and the loan from the mortgage company fixed up she would take the property. This evidence did not compel a finding that appellee had breached or repudiated his contract. It

merely shows the way his wife felt about the matter and is not at all conclusive as to his attitude. His wife was not a party to the contract.

The fourth point is that the court erred in concluding as a matter of law that the fact that appellee contracted to purchase this property as a residence with full knowledge that it was in a residential neighborhood and with at least constructive notice of the residential restrictions was no defense. We agree with the trial court in this conclusion. The restrictions limit the use of the property as a residence. If appellee was charged with notice of them he was not charged with notice that they could not be removed as to this particular lot. He was not compelled to take the property encumbered with restrictions which were not excepted in the contract.

All of appellant's points are overruled and the judgment of the trial court is affirmed.