**LUNT LAND CORPORATION, Appellant,**

v.

**STEWART TITLE GUARANTY COMPANY,**
**Appellee.**

No. 16189.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 6, 1961.

Rehearing Denied Feb. 3, 1961.

———◆———

Lyne, Blanchette, Smith & Shelton, and Erich F. Klein, Jr., Dallas, for appellant.

Chancellor & Wood, and Harold E. Wood, Dallas, for appellee.

MASSEY, Chief Justice.

In the case on appeal it appears that the landowner, presumably in good faith and without knowledge that a third person held record title to a pipeline easement across the land, purchased a policy of title insurance covering the same. In consideration of the premium paid, the insurance company issued Texas' standard form of Title Guaranty Policy, guaranteeing that the landowner had "good and indefeasible title" to the subject property, describing the same. Coverage of the policy was made subject to restrictive covenants; discrepancies, conflicts, or shortages in area or boundary lines or encroachments which a correct survey would show; taxes for the current and subsequent years; rights of parties in possession; parts of the land in any road or roadway on or across the same; etc. Coverage was not made subject to easement or encumbrance of any kind.

The policy of insurance further provided that the insurer should "not be liable in a greater amount than actual monetary loss of (the) assured", and that "Upon payment of any loss * * * the Company shall be entitled to be subrogated to all rights of assured against all other parties." It was further provided that "Upon the sale of the property covered hereby, this policy automatically thereupon shall become

a warrantor's policy * * * for a period of twenty-five years" from the date the policy was issued and made effective, and as such would fully protect the party insured and his heirs, executors and administrators "by reason of the payment of any loss he or they may sustain on account of any warranty contained in the deed executed by assured conveying said property." The following language was also contained in the policy, "* * * The Company to be liable under said warranty only by reason of defects, liens or encumbrances existing prior to or at the date hereof (and not excepted above) such liability not to exceed the amount above written."

First Basic Question: What right, if any, did the landowner have to recover under the policy because of the diminishment in value of the land, if any, by reason of the existence of the pipeline easement across the land?

■ Answer: As applied to said diminishment in value, the policy is to be considered as one of insurance rather than as an indemnity policy. In the event the landowner was ignorant of the existence of the easement at time he received the policy, and was not chargeable with a breach of good faith, etc., he is entitled to recover under the policy.

In view of the foregoing answer, arrived at in answer to the first basic question, the second such question is reached.

Second Basic Question: What was the effect, if any, upon the right of such landowner to collect under the policy, if notice of the loss and claim under the policy, by reason of said diminishment in value, be made upon the insurer after the owner had contracted to sell the land, and which contract to sell was consummated by sale and transfer of title?

■ Answer: The liability of the insurer to the owner to whom it issued the policy was not affected by the transaction between the landowner and the grantee in the execution and delivery of the deed to the property.

■ It is true that the policy in question was in one respect a contract of indemnity rather than of insurance, but in so far as the policy guaranteed the landowner that he had "good and indefeasible title" to the property it was a contract of insurance. The parties to the instant contract must be held to have agreed that the insured under the policy would be made whole, in what both parties "supposed he had" by way of title to real property, in the event it should later be discovered that he held a lesser estate. 60 A.L.R.2d 972, et seq., Annotation, "Measure, extent, or amount of recovery on policy of title insurance." This means that if after the policy is issued it develops that the property is burdened with an encumbrance, within the contemplation of such title insurance policy, to the diminishment of the value of the property insured, loss to the extent of said diminishment in value should fall upon the insurance company rather than upon the insured person to whom it issued its policy. 29A Am. Jur., p. 488, "Insurance", sec. 1372, "Title Insurance"; 66 Yale Law Journal (1957) 492, article by Professor Quintin Johnstone, "Title Insurance"; Appleman's Insurance Law and Practice, vol. 9, p. 15, "Title Insurance", sec. 5210, "(Risks and Causes of Loss)—Liens and Incumbrances"; Foehrenbach v. German-American Title & Trust Co., 1907, 217 Pa. 331, 66 A. 561, 12 L.R.A., N.S., 465, 118 Am.St.Rep. 916.

A pipeline easement, especially one which consists of a high pressure gas line as was found in the instant case, is such an encumbrance, i. e., a right to or interest in the land which may subsist in third persons, which, though consistent with the passing of the fee by deed of conveyance, ordinarily results in a diminution of the value of the land. See Overholtzer v. Northern Counties Title Ins. Co., 1953, 116 Cal.App. 2d 113, 253 P.2d 116.

The easement instrument, under authority of which the pipeline was placed across

the property, contained a provision which reads: "It is agreed and understood that in the event the pipe line constructed under this Easement interferes with the location of a present or future permanent structure or structures on the above described property, Grantee shall, within sixty days after receipt of written notice by registered mail from Grantor to Grantee at Dallas, Texas, relocate said pipe line to another location on said property so as to eliminate said interference at grantee's expense, but without additional cost of grantee for right of way."

It was pursuant to activity on the part of the insured landowner to contract to sell, and to sell, the property that the existence of the easement was discovered. In view thereof, coupled with persuasive argument premised upon the language of the instrument of easement (quoted in the foregoing paragraph), the insurer contends that it should not be held liable even though it be properly deemed liable to some extent were the title still in the insured. The insurer's theory, upon which it advances the contention, is that it was prejudiced because it was precluded from taking steps to eliminate the presence of the pipeline across the property or to negotiate for its elimination, or, in any event, was precluded from taking steps to have the pipeline easement relocated so as not to interfere "with the location of a present or future permanent structure or structures on the * * * property." But for the sale of the property, says the insurer, it would have been able to eliminate or mitigate the insured's loss by reason of any diminution in value of the property because of the existence of the easement. Further, the insurer contends that by reason of the insured landowner having parted with title it was deprived of subrogation rights to which it otherwise would have become entitled upon payment of any claim, and that upon consummation of the sale of the property the policy was "ipso facto" converted into a "warrantor's policy" rather than any other form of insurance, which, under the provisions of the policy, left the insurer liable only to indemnify its named assured (and its heirs, executors and administrators) for any liability which might be imposed upon it by reason of the warranty contained in the insured's deed of conveyance.

We see nothing resulting from the sale of the property which deprived the insurer of any right of subrogation otherwise inuring to it. In any event, the insurer was not deprived of any opportunity to obtain indemnity if any properly be deemed existent at any time and afforded to it under principles of subrogation. Further, under standard rules of contractual construction, especially as applied to insurance contracts, we can find nothing in the policy which would provide for the forfeiture of any right because of the sale of the property in the event the insured, on or before the date of its sale, had a valid and legitimate claim thereunder. We are of the opinion that the provision of the policy that upon sale of the property covered it would automatically become a warrantor's policy should be treated as having enlarged the coverage of the policy and not to have reduced or diminished the liability thereunder provided in other paragraphs and sections.

Additional contentions of the insurer, other than in assertion of nonexistent legal rights, present nothing more than matters of fact to be resolved on a trial of the case. Pursuant thereto, the jury or other finder of fact should take into consideration all proper evidence presented to it in the determination of whether or not, by reason of the easement, there was diminution in value of the subject property and the amount thereof, if any.

■ The judgment appealed from was a summary judgment granted upon motion of the insurer. From what we have said, it is apparent that the judgment was erroneous. The insured landowner also moved for summary judgment. Denial of its motion was proper even though its motion be deemed one for a partial summary judg-

ment settling the matter of liability only. Evidence before the court raised an issue of said insured's good faith and factual knowledge of the existence of the easement, the pipeline having apparently been installed prior to the time it purchased the insurance policy and presence thereof being apparent in an examination of the premises.

Judgment is reversed and the cause remanded for trial.