STEWART TITLE GUARANTY COMPANY V. LUNT LAND CORPORATION

No. A-8275. Decided June 7, 1961
Rehearing overruled July 12, 1961
(347 S. W. 2d Series 584)

436

*Chancellor & Wood*, of Dallas, for petitioner.

*Lyne, Blanchette, Smith & Shelton*, of Dallas, for respondent.

MR. JUSTICE NORVELL delivered the opinion of the Court.

The trial court granted defendant-petitioner's motion for summary judgment. This judgment was reversed by the Court of Civil Appeals, 342 S.W. 2d 376. We reverse this order of the lower appellate court and affirm the trial court's action. The undisputed facts are as follows:

On March 10, 1954, L. D. Tuttle and wife, by warranty deed, conveyed 50.1 acres out of the Henry Gough Survey (Abstract No. 493) Dallas County, Texas, to D. Eldon Lunt for a consideration of $12,500. At the time, the tract was subject to an easement in favor of the Lone Star Gas Company executed by Tuttle in 1949 which gave the gas company the right to lay and main-

tain an underground high pressure gas transmission line across the premises. The easement contract provided that if the pipe line should interfere with any present or future permanent structure upon the property, the gas company would relocate the line so as to eliminate the interference. This easement was not excepted from the Tuttle warranty.

On May 1, 1957, D. Eldon Lunt and wife conveyed the property by warranty deed to Lunt Land Corporation, the plaintiff-respondent, for a recited consideration of $12,500. The warranty in this deed contained no exception as to the gas company easement.

On June 19, 1959, Lunt Land Corporation secured two policies of title insurance from petitioner, Stewart Title Company; one being a mortgagee's policy covering a $148,400 loan made to the land corporation by Hillcrest State Bank of University Park; the other being an owner's policy. Both policies covered five tracts of land in Dallas County, including the 50.1 acres out of the Henry Gough Survey (Abstract No. 493) which L. D. Tuttle had conveyed to D. Eldon Lunt. The face amount of this policy covering the five tracts was $175,000. The pertinent provisions of the policy were as follows:

"Stewart Title Guaranty Company * * * does hereby guarantee to Party or Parties named below (Lunt Land Corporation) herein styled assured * * * that the assured has good and indefeasible title to the following described property subject to the following liens: (the Hillcrest Bank lien is then described followed by a description of the five tracts of land covered by the policy.) * * *.

"Said Company shall not be liable in a greater amount than the actual monetary loss of assured, and in no event shall said Company be liable for more than One Hundred Seventy-five Thousand and No/100 Dollars, * * *.

"Upon the sale of the property covered hereby, this policy automatically thereupon shall become a warrantor's policy and the assured, his heirs, executors and administrators, shall for a period of twenty-five years from date hereof remain fully protected according to the terms hereof, by reason of the payment of any loss he or they may sustain on account of any warranty contained in the deed executed by assured conveying said property. The Company to be liable

under said warranty only by reason of defects, liens or encumbrances existing prior to or at the date hereof (and not excepted above) such liability not to exceed the amount above written."

This policy contained no exception relating to the Lone Star Gas Company easement.

In the first part of August, 1959, according to the testimony of D. Eldon Lunt, President of the land corporation (given in deposition form) he and his company for the first time gained knowledge of the gas company's easement.

On September 2, 1959, after he had obtained such knowledge, Lunt, acting for and on behalf of the corporation, entered into a valid contract of sale binding the corporation to convey the 50.1 acre tract out of the Henry Gough Survey (Abstract No. 493) to Bunker Hills, Inc. for a consideration of $1,875 per acre.

On September 11, 1959, nine days after the property was sold, Lunt, in behalf of his corporation, notified petitioner of its claim under the title insurance policy.

On September 17, 1959, Lunt Land Corporation conveyed the 50.1 acre tract by warranty deed to Mayflower Investment Company, the nominee of Bunker Hills, Inc. No exception was made in the warranty as to the Lone Star Gas Company's easement.

Respondent's theory and pleaded measure of damages was that the 50.1 acre tract:

"* * * has a reasonable market value, without the presence of the hereinbefore referred to high pressure gas line, of $130,000.00. That [said] * * * tract of realty, with the high pressure gas line located thereon, has a reasonable market value in Dallas County, Texas, of $94,000.00. That as a result of the said pipeline being located on the hereinabove described tract the title in and to the said tract has failed and as a result of such failure of title Plaintiff has been damaged in the sum of $36,000.00, which sum Plaintiff is entitled to recover of and from the Defendant."

In the Annotation relating to "Title Insurance—Amount

Recovery" contained in 60 A.L.R. 2d 970, it is pointed out that there is variation as to the methods of measuring the loss sustained by an owner because of undisclosed easements or liens insured against by a title policy. Such methods necessarily differ according to the nature of the defect and the circumstances in the particular case. Where the title defect is the existence of an easement, the measure of liability will generally be the cost of removing the easement.

The circumstances of the present case are unusual and scant authority has been called to our attention which bears upon the situation.

The nature of the easement itself is hardly common and seems to invite negotiation at some future time with reference to change in location or perhaps removal of the pipe line crossing the property.

Then there is the circumstance that in 1957, Lunt conveyed the property to the land corporation with full warranty of title. This was two years prior to the issuance of the Stewart title policy.

■ While photographs made a part of Lunt's deposition indicate that the gas line easement had been marked by a cindero and signs for some period of time, we accept his statement that he never gained knowledge of the easement until the early part of August, 1959. He did not, however, notify the title company of a prospective sale of the property so they could mitigate an impending loss under their policy by negotiating with the gas company for a removal of the pipe line or the purchase of its easement rights. On the contrary, he sold the property and even then did not notify the title company until nine days after the contract of sale was signed. The deed given by the Lunt Land Corporation in consummation of the contract of sale contained a clause binding it, its successors and assigns "to warrant and forever defend, all and singular the said premises unto the said Mayflower Investment Company, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof." This warranty covered the pipe line easement.

In the trial court the petitioner urged by plea in abatement and by summary judgment (both of which were heard together) that upon the sale of the property, the title policy ceased to be an

owner's policy and became a warrantor's policy. This contention went to the merits. The present suit is not based upon the provisions fixing the title company's liability under the contract considered as a warrantor's policy, and the judgment of the trial court would have no effect upon an assertion of liability under such provision.

█ The language of the policy upon the particular point is clear and certain: "Upon the sale of the property covered hereby, this policy thereupon shall become a warrantor's policy * * *." It is hardly contemplated that the title guarantor would be liable to the same person for the same defect in title under both the "owner's policy" provisions and the "warrantor's title" provisions. The contract provides successive liabilities. This does not mean that liability having once accrued under the "owner's policy" will necessarily be extinguished by a sale of the property, but that the holder of the title policy, when he knows of the title defect, must give notice or take some appropriate action to prevent the automatic conversion of the contract from an owner's to a warrantor's policy. He cannot, having such knowledge, remain silent, sell the property, execute a full warranty deed thereto and then contend that the policy remained in effect as an owner's policy despite the specific wording thereof.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.