Israel **ROSENFIELD** et al., Appellants,

v.

**POLLOCK REALTY COMPANY** et al., Appellees.

No. 16924.

Court of Civil Appeals of Texas.

Dallas.

June 16, 1967.

**834**

G. Dennis Sullivan of Goldberg, Alexander & Baker, Dallas, for appellants.

Dan Rogers, J. Claude Jackson, Jr. & John W. Copeland of Thompson, Knight, Simmons & Bullion, Dallas, for appellees.

DIXON, Chief Justice.

Appellants Israel Rosenfield and Phillip Rosenfield filed suit against appellee Pollock Realty Corporation and two other defendants, alleging breach of a contract to purchase land and seeking recovery of $20,000 which sum has been held in escrow since the signing of the contract of sale. The two other defendants have been dismissed from the suit and are not concerned in this appeal.

Appellee filed a cross-action asking that the escrow money be refunded.

On February 5, 1965 the parties entered into a written contract whereby appellants agreed to sell and appellee agreed to purchase certain industrial property in the City of Dallas for a consideration of $800,000, of which sum $20,000 was placed in escrow with a title company by appellee. This money was to serve as liquidated damages in the event of breach of contract by appellee.

The contract provided that at time of closing appellants would convey to appellee good and marketable title to the property free and clear of all encumbrance except those named in the contract.

The closing date was originally set for February 26, 1965, but by mutual agreement was extended to March 1, 1965, and later to March 9, 1965. Appellants dispute that they agreed to the last extension.

On March 8, 1965 by letter appellee gave appellants notice that pursuant to the terms of the contract it had elected to terminate the contract of sale because of defects in title, and requested that the $20,000 deposited in escrow be refunded.

Thereafter on April 12, 1965 appellants sold the property to another party for a consideration of $790,000. They complain that they had to pay a commission of $10,000 to the real estate broker who had procured the contract with appellee.

In a nonjury trial judgment was rendered against appellants and in favor of appellee awarding a refund to appellee of the $20,000 escrow money plus interest.

Appellants have briefed twelve points of error in which they assert that the court erred in finding (1) that appellee terminated the contract because of the alleged title defects; (2) that water from the property in question flows toward the adjacent land of Industrial Properties Corporation; (3) that appellants on sale to Catco, a Leland Fikes corporation, conveyed less than they agreed to convey to appellee; (4) that there is no evidence that appellants tendered to appellee an owner's title policy covering the property; (5) that there was no evidence that appellants furnished to appellee a survey acceptable to the title company as required by the contract; (6) that the closing date was extended to March 9, 1965; (7) that the agreement pertaining to water flow was not a restrictive covenant or condition in connection with the creation of any addition or subdivision of which the

property is a part, and (8) was an encumbrance which was not permitted or excepted under the contract; (9) the lease between Liberty Steel Company and St. Louis Terminal Field Warehouse and (10) the Industry Track Agreements in favor of C. R. I. & P. Railway Company were not encumbrances permitted or excepted under the contract; (11) that appellants were unable to convey the property free and clear of any and all encumbrances other than those permitted under the contract. The twelfth point is that the court erred in holding that appellee was entitled to recover the escrow money.

■ We think the evidence supports the court's finding that appellee terminated the contract on March 8, 1965. The letter of notification so states. It is true that the two attorneys for the parties made some effort thereafter to cure the defects in title, but the notice of termination was not withdrawn. Moreover, appellants obviously accepted the fact of termination for this is not a suit for specific performance; and one month after receiving the notice appellants sold the property to another purchaser. The first point is overruled.

■ There is evidence that water from appellants' property flows toward the adjacent land of Industrial Properties Corporation. There is evidence to the contrary, but in the face of conflicting testimony the court's finding is binding on this court. The second point is overruled.

There is evidence that valuable industrial machinery was attached to the real estate in such manner as to make it a part of the realty. When appellants sold the property on April 12, 1965 to the other purchaser this machinery by express terms was not included in the sale. The court properly found that appellants conveyed to Catco, a Leland Fikes corporation, less than they had agreed to sell appellee. The third point is overruled.

■ The deed prepared by a title company listed several encumbrances and burdens to which the title was subject which encumbrances and burdens were not among those listed as permitted and excepted in the contract of sale. We find no evidence of a tender of a title policy on a deed which did not include these additional encumbrances. The fourth point is overruled.

■ Appellants argue that "The survey would have to have met the approval of the title company otherwise it would not have issued the title policy." As we stated above there is no evidence that a deed was issued or tendered which listed only the permitted or excepted encumbrances. So there was no title policy tendered on a deed which complied with the contract. Anyway, appellants' conclusion as to what the title company would not have done is speculative and not evidence of a material fact. The fifth point is overruled.

■ On March 1, 1965 appellee refused to close the contract of sale because of defects in title. On March 3, 1965 appellants by their attorney wrote a letter to appellee disputing the alleged title defects and requesting reply from appellee "to arrive at our office not later than 10:00 A.M., Tuesday, March 9, 1965." On March 30, 1965 appellants in another letter reviewed prior events and stated that in the letter of March 3, 1965 " * * * we requested a closing at 10:00 o'clock A.M. on Tuesday, March 9, 1965, * * *." Thus appellants' own interpretation of their letter of March 3, 1965 was that it in effect set a new closing date for March 9, 1965. The sixth point is overruled.

Appellants' seventh to eleventh points inclusive really get to the heart of this controversy.

Among the principal defects alleged is a "Water Diversion Agreement" between appellants and Industrial Properties Corporation, former owner of appellants' property and still owner of adjacent property. Un-

der the terms of this instrument appellants agreed (1) that all water and storm drainage falling on or running over across appellants' property would be so regulated and controlled as to flow in certain specified drainage routes and (2) not on, under or across the adjacent land of Industrial Properties Corporation; (3) appellants and their successors and assigns released and forever discharged Industrial Properties Corporation, its successors and assigns, from any liability from filling its lands, from the construction of buildings and other structures thereon and from the preventing of storm or rain waters or drainage of any kind from flowing from appellants' property on, under, across or over Industrial Properties Corporation's land; and (4) the "Water Diversion Agreement" was to run with the land.

By entering into the above agreement appellants parted with valuable rights and placed a heavy burden on the land and its present and future owners. Industrial Properties Corporation and its successors are permitted by the agreement to divert in various ways the flow of storm and rain water which would naturally flow from appellants' property to the corporation's property; and it may do so free of liability though the result might be to cause the water to back up on appellants' land.

■ We think the Water Diversion Agreement represents an outstanding interest in land—an encumbrance in favor of Industrial Properties Corporation. Lunt Land Corp. v. Stewart Title Guaranty Co., 342 S.W.2d 376 (Tex.Civ.App., Fort Worth 1961, rev'd on other grounds, 162 Tex. 435, 347 S.W.2d 584); Levine v. Turner, 264 S.W.2d 478 (Tex.Civ.App., El Paso 1954, writ dism'd); Newman v. Hasslocher, 242 S.W.2d 822 (Tex.Civ.App., San Antonio 1951, no writ); Clements v. Taylor, 184 S.W.2d 485, 487 (Tex.Civ.App., Eastland 1944, no writ); Spencer v. Maverick, 146 S.W.2d 819 (Tex.Civ.App., San Antonio 1941, no writ); Shaw v. Morrison, 14 S.W.2d 953 (Tex.Civ.App., Eastland 1929,

no writ); Miller v. Babb, 263 S.W. 253, 254 (Tex.Comm'n App.1924, opinion adopted); 58 Tex.Jur.2d 411. The agreement was not among the encumbrances and covenants permitted or excepted under the terms of the contract; and there is no evidence that it is a restrictive covenant or condition in connection with the creation of any addition or subdivision of which the property is a part. The seventh and eighth points are overruled.

■ Investigation disclosed the existence of a lease agreement between Liberty Steel Company (wholly owned by appellants) and St. Louis Terminal Warehouse Company dated October 30, 1963. This lease contains a provision that it could be terminated by appellants on thirty days' notice. But on closing day it had not been terminated, nor had appellants given any notice of termination. It was not included among the encumbrances permitted or excepted in the contract. It constituted an encumbrance on the land on the day of closing contrary to the terms of the contract. Lunt Land Corp. v. Stewart Title Guaranty Co., 342 S.W.2d 376 (Tex.Civ. App., Fort Worth 1961, rev'd on other grounds, 162 Tex. 435, 347 S.W.2d 584). Appellants' ninth point is overruled.

■ Before the closing date there came to light two outstanding Industry Track Agreements, one dated February 29, 1952, the other September 9, 1947, granting the C. R. I. & P. Railway Company the right to construct, maintain and operate side tracks on appellants' property. Appellants argue that since these tracks lay wholly on appellants' property they could easily be removed at the owner's request. Be that as it may, the tracks had not been removed nor had the agreement been cancelled on March 9, 1965. They were burdens on the property and were not included among those permitted or excepted under the terms of the contract. Alling v. Vander Stucken, 194 S.W. 443 (Tex.Civ.App., San Antonio 1917, writ ref'd). The tenth point is overruled.

We agree with the trial court that appellants were unable to convey the property free and clear of any and all encumbrances other than those permitted under the contract. The eleventh point is overruled.

■ The contract itself provides that the escrow money is to be refunded should the title prove to be defective. Since the title was defective appellee is entitled to recover the deposit. Galbreath v. Reeves, 82 Tex. 357, 18 S.W. 696 (1891); Levine v. Turner, 264 S.W.2d 478 (Tex.Civ.App., El Paso 1964, writ dism'd). The twelfth point is overruled.

The judgment of the trial court is affirmed.

Affirmed.